(22 Misc. Rep. 664.)

METCALF et al. v. MOSES et al.

(Supreme Court, Special Term, New York County.    February, 1898.)

1. FRAUDULENT CONVEYANCES—WHAT CONSTITUTES—ASSIGNMENT FOR CRED
ITORS.
    Where it appeared that a firm of merchants had a surplus of assets over
liabilities of over $150,000, and nine months later were insolvent, without
sufficient explanation for the sudden change; that during the latter part of
such time they disposed of all their property by confessing judgments on
which executions were immediately levied on their personal property, and
assigned, in addition, all of their book accounts, except $20,000, which they
had previously assigned to other preferred creditors, to secure any deficiency
in the collection of such judgments; that two of the partners had a friendly
receiver appointed, under an order making the levy under the executions and
the assignments precede any rights of the receiver,—the judgments and
transfers are void, as made with intent to defraud the other creditors by
preferring said creditors in full to the exclusion of all others.

2. SAME—RIGHTS OF JUDGMENT CREDITORS.
    .Leave will not be granted judgment creditors to satisfy their judgments in
full out of the assets in the hands of a receiver of the debtor where no ex-
ecutions thereon were levied before the appointment of the receiver, since
said creditors can only claim an equitable lien such as is ordinarily im-
pressed on property by a favorable judgment, following the filing of a credit-
ors' bill.

3. SAME—SETTING ASIDE CONVEYANCES.
    In an action to set aside fraudulent transfers of property by an insolvent
firm of which a receiver had afterwards been appointed in another action,
the court may set aside a fraudulent sale made by said receiver while acting
in collusion with the firm and certain preferred creditors.

4. SAME—RECEIVERS.
    Where a firm, claiming to be insolvent, after having fraudulently preferred
certain creditors in full by transfers of all their property to the exclusion of
their other creditors, had a friendly receiver appointed, the fact of plaintiff
creditors' diligence in the pursuit of legal remedies, on first discovering the
illegality of the transaction, will not permit the appointment of a new re-
ceiver for the sole purpose of taking the property out of the possession of the
other receivers (one having been appointed by court to represent the unpre-
ferred creditors), and paying plaintiffs' claims in full, since a decree setting
aside such transfers, and allowing plaintiffs to prorate, is the only relief prop-
erly allowed.

Action by Manton B. Metcalf and others against Morris Moses
and others to set aside fraudulent transfers of real and personal
property and confessions of judgment made by partners.    Judg-
ment for plaintiffs.

Nelson S. Spencer and Otto C. Wierum, Jr., for plaintiffs.
A. Blumenstiel, for defendants Bernard Moses and others.
Samuel Greenbaum, for Lilianthal.
John Frankenheimer, for E. A. Marcus.
James Byrne, for receiver Franklin.

RUSSELL, J.    This action is brought to set aside the fraudulent
transfers and confessions of judgment made by the debtors, Lesser
Bros., who were merchants doing business in the city of New York.
·In January, 1896, that firm had a surplus of assets over liabilities
of $153,866.24.    On the 2d day of October, 1896,—nine months later,
—the entire property of the partnership, with a prudent collection

of their accounts and a well-managed receivership sale of their merchandise, would not pay 40 cents on the dollar of their indebtedness.    There intervened no extraordinary losses of merchandise or on collections, and no sufficient explanation is given of this great discrepancy in nine months of business life.    Shortly before the 2d day of October, 1896, the debtors planned to dispose of their partnership and individual property which would be liable to execution, by some arrangement the most favorable to themselves that could be devised in the then emergency of pressing obligations. They were in position to compel assent to their proposed action by those creditors whose debts they wished to secure or pay in preference to all others.    Their voluntary action in the execution of their plan was assented to by the creditors preferred, during the consummation of the scheme, in such a way, and with such inferential knowledge on the part of the creditors, as to make them participants in the purpose and effect of the plan.

   The evidence is voluminous, and the details of the various transactions complicated; but it is unnecessary to scan each of these details here, as the leading purpose and object of the ultimate result run through each of the events, culminating on the 2d day of October, 1896.    That purpose and result, if successful, disposed of their entire property, partnership and individual, so far as it could be reached by creditors, by paying some of them in full, and leaving others without any prospect of a share in the insolvent estate. It would not answer to make a general assignment.    A provision of law (chapter 503, Laws 1887) prevented a preference of over one-third in value of the assigned estate left after deducting the wages or salaries and the costs and expenses of executing such trusts. Therefore, the method pursued was adopted to achieve the result which could not apparently be otherwise accomplished.    Five judgments were confessed in favor of some of the defendants, amounting to $20,205.86, and executions immediately levied upon the personal property.    Assignments of the best of the accounts for more than $20,000 were made to other defendants, and an omnibus assignment of all other accounts was made to secure any deficiency arising upon the collection of the confessed judgments, which omnibus assignment was unnecessary to secure those judgment creditors, if the judgments were valid, and not too great an amount of merchandise should be taken away under replevin actions brought by vendors on the ground of the sales being made by the fraud of the debtors.    To cover the whole, and prevent the lien of attachments reaching any of the merchandise or choses in action, like a general residuary clause in a will to prevent intestacy as to any part, a friendly receivership suit was brought by two of the partners against the third, and a friendly receiver appointed by order of the court, the order so taking effect that the levies under the executions and the assignments preceded any right of the receiver.    The whole arrangement was in direct violation of the theory of the law that no disposition of the entire property of the insolvent debtor shall be made which prefers some creditors in full to the exclusion of all others, and which was adopted to accomplish the result of a general

assignment with preferences in full, without being bound by the law in regard to such assignment. There were transfers of individual property by two of the partners with some understanding as to continued possession by the debtors, and some other indications of fraudulent intent, to which it is not here necessary to refer. There is no doubt that a debtor, honestly acting, may pay any debt by the transfer, if necessary, of all of his property, he receiving full value for it. Tompkins v. Hunter, 149 N. Y. 117, 43 N. E. 532. He may mortgage a part of his property to secure creditors, even if insolvent. Delaney v. Valentine, 154 N. Y. 692, 49 N. E. 65. In the cases cited the debtor does not undertake to place all of his property, by any form of a transfer, beyond the reach of his creditors. Up to the point of action where, through one instrument, or a series of instruments, he transfers all the property he has, and prefers in full some creditors to the entire exclusion of all others, he has the right to honestly choose the creditors whom he desires paid, if the transaction does not involve a design of personal benefit to himself. If the transaction, however, has all the substantial legal effect of a general assignment to pay creditors, without some of its safeguards, the right of preference should be curtailed, and an attempt to avoid the prohibitions of the assignment act should condemn the validity of the evasive acts. I know of no case which upholds a transaction of the kind as legal. And if such an evasive purpose, carried into action, is not in itself, as a matter of law, sufficient to avoid the acts of the debtor, it is still important evidence upon the general question of an intent to hinder, delay, or defraud. The unexplained change from abundant solvency to insolvency within a few months; the disappearance of books of account; the hurried events of the 2d of October; the unnecessary assignments of all remaining accounts in alleged protection of creditors who were amply secured; the collusive proceedings for the appointment of a receiver, who should hold in custody as an officer of the court all the property which might for any cause be afterwards exposed to attack, and which, if followed by a judgment and permanent receivership, took into its friendly embrace the rights of inquiry into the disposition of property apparently passed away between January and October; and the subsequent conduct of the parties in relation to the property,—produce a conclusion of fraud which cannot be overcome.

The confessions of judgments and the transfers of accounts and other property should be declared fraudulent and void, as made with intent to hinder, delay, and defraud the creditors, and the property and its proceeds be freed from their apparent effect. The judgment, however, which should be rendered will not go to the extent of the relief demanded by the plaintiffs, who ask for the payment of their judgments, and the appointment of a receiver to apply the property and its proceeds for that purpose. If the plaintiffs had levied executions before the appointment of the receiver, such relief as they now ask might be given. In re Thompson, 10 App. Div. 40, 41 N. Y. Supp. 741; Myers v. Myers, 15 App. Div. 448, 44 N. Y. Supp. 513. The plaintiffs here can only claim an

equitable lien, such as is ordinarily impressed upon property by a favorable judgment, following the filing of a creditors' bill. Were there no receivership, and had the court not assumed jurisdiction of the property to the extent that a receiver representing all the creditors might claim, possibly such a lien as the plaintiffs desire might still be adjudicated, although in case of partnership property other considerations might prevent. The receivership in question has been confirmed by the appointment of an additional receiver, who is acceptable to the unpreferred creditors. It would be a matter of very doubtful propriety to set aside the appointments of these receivers, made by this court, in a collateral action, simply for the purpose of letting one set of creditors obtain a preference from which they are so strenuous in excluding others. O'Mahoney v. Belmont, 62 N. Y. 133. Undoubtedly, the court has power, as between the parties, in an action commenced for that purpose, to set aside any judgment or decree obtained by collusion or fraud. Dobson v. Pearce, 12 N. Y. 156; Wright v. Miller, 8 N. Y. 9; State v. Phœnix Bank, 33 N. Y. 26. And the court will assume power in such an action to set aside a fraudulent sale made by collusion of the receiver appointed in another action. Hackley v. Draper, 60 N. Y. 88. Unless this court has power to do so, and sees equitbale reasons to justify the exercise of that power, the orders of this court in the partnership action appointing the receivers should stand for the protection of the property which has been gathered within the grasp of the court, and no new receiver should be appointed in this action for the sole purpose of taking that property out of the possession of the other receivers, and paying the plaintiffs' claims in full. The sole ground upon which a claim for such preference can be made is that of diligence in the pursuit of legal remedies uncovering the transactions in controversy. Such a consideration is not sufficient, and the plaintiffs will be rewarded to a substantial extent by the relief granted if they get their fair share of the insolvents' estate. The receivers, therefore, in the partnership action take the entire partnership property as it was before the confessions of judgment on the 2d of October, 1896, except that the proceeds are substituted as to property disposed of with their consent, and with all the rights of action which they, as receivers, would have to trace and follow the property of the partnership freed from the lien of the executions, assignments, and transfers. But as to the conveyance of the houses, which property the receivers do not take, the deeds are set aside as against the plaintiffs, with the usual judgment as in like cases. Costs are awarded in favor of the plaintiffs against the defendants, except the receivers.

Ordered accordingly.