(37 Misc. Rep. 292.)

### BARKER v. FRANKLIN et al.

(Supreme Court, Special Term, New York County. February, 1902.)

1. BANKRUPTCY—FRAUDULENT CONVEYANCES—ACTION BY TRUSTEE.

Under Bankr. Act, § 70, giving title to property fraudulently transferred to the trustee in bankruptcy, and authorizing him to sue to set aside fraudulent transfers, and by Laws 1858, c. 314, giving such trustee the same right to set aside a conveyance as a judgment creditor, a trustee in bankruptcy can sue to set aside transfers made by an insolvent firm and its members with intent to hinder and defraud creditors.

2. SAME—EVIDENCE.

A firm not shown to have been insolvent suddenly confessed judgment, and transferred accounts to such an extent as to put all of them in the hands of favored creditors. It collusively procured the appointment of a friendly receiver, and conveyed individual real estate by two of its members to a creditor, thereby putting all its visible assets beyond the reach of its unsecured creditors. Held, that the transactions would be set aside as fraudulent in a suit by the trustee in bankruptcy of the firm.

3. SAME.

Where creditors of an insolvent, without taking any action themselves, accept the advantage which he gives them by conveyance of his property as a part of a fraudulent scheme, the conveyance will be set aside.

4. SAME—KNOWLEDGE OF FRAUD.

Where individual members of a firm on the eve of failure convey individual real estate to a bona fide creditor, with intent to hinder their other creditors, the conveyance will be set aside, though the creditor did not know of the fraudulent scheme, but knew that the firm was about to fail.

5. SAME—CONFESSION OF JUDGMENT.

Where a creditor compels a confession of judgment without notice of a fraudulent scheme of his debtor to defraud his creditors, and before such scheme has been put in operation, the judgment is valid, though the creditor's attorneys are subsequently employed by the firm in preparing fraudulent confessions of judgment, where neither the creditor nor the attorneys knew of the fraudulent scheme.

Action by Benjamin Barker, Jr., trustee in bankruptcy, against James T. Franklin, Morris Moses, and others, to set aside certain judgments confessed by the bankrupts, and also the transfer of certain accounts. Judgment for plaintiff as to part of the relief asked for.

Otto T. Hess, for plaintiff.

Blumenstiel & Hirsch, for defendants Lesser Bros. and others.

Samuel J. Cohen (Daniel Clark Briggs, of counsel), for defendants Cohen and others.

Charles Strauss, for defendant Adler.

75 N.Y.S.—20

McCready Sykes, for defendant receivers.

Samuel Greenbaum, for defendant Lilianthal's executors.

Myers, Goldsmith & Bronner, for defendant Moses.

GILDERSLEEVE, J. This action is brought by the plaintiff, as trustee in bankruptcy of the firm of Lesser Bros., composed of Tobias, Israel, and Simon Lesser, and of the Lessers individually. Its purpose is to set aside certain judgments confessed by the said firm in favor of some of the defendants, respectively, and the transfer of a portion of the accounts of the firm to the defendant Marcus A. Adler; also conveyances of real estate made by two members of the firm to the defendant Lilianthal; also certain proceedings had in an action brought by Tobias and Israel Lesser against Simon Lesser, in which action the plaintiffs claim that the firm was insolvent and unable to pay its debts, and in which action receivers were appointed, who have taken possession of a large amount of the assets of the firm; also transfers of accounts made by said firm to Louis Cohen (now deceased), Rose Cohen, Abraham L. Cohen, Rebecca Berg, and Reuben and Henry Nadel; and also an assignment of accounts made to secure the judgment creditors for any deficiency resulting under the executions on their judgments. It is urged as the ground for the foregoing demand that the several acts in question were part of a scheme to hinder, delay, and defraud the creditors of Lesser Bros.

The action is properly brought by the trustee in bankruptcy. By Bankr. Act, § 70, the title to property fraudulently transferred is stated to be vested in the trustee in bankruptcy. By section 70 the trustee in bankruptcy is given the power to maintain an action to set aside fraudulent transfers. By chapter 314 of the Laws of 1858, this trustee is given the same right to set aside a conveyance or transfer made to hinder, delay, or defraud creditors, as a judgment creditor has. This act was held to apply to an assignee in bankruptcy under the subsequent act of 1867. See Southerd v. Benner, 72 N. Y. 424.

Most of the transactions in question in this action have been the subject of judicial inquiry and determination in the case of Metcalf v. Moses, 22 Misc. Rep. 664, 50 N. Y. Supp. 1060; Id., 35 App. Div. 596, 55 N. Y. Supp. 179; and Id., 161 N. Y. 587, 56 N. E. 67. Metcalf was a judgment creditor, and the judgment in that action was in his favor only. It is not res adjudicata in the case at bar, but, wherever a similar state of facts is disclosed herein, the rulings and conclusions in the Metcalf Case, that have been approved or determined by the court of appeals, must be followed in the case at bar. It is essential to a proper decision of this action to scrutinize the testimony with great care, in order to ascertain if the facts herein differ from those established in the Metcalf Case. Wherever the facts herein present a different question, the rules of law laid down in the Metcalf Case do not control.

The Lesser Bros. were a firm of merchants engaged in the manufacture and sale of clothing in the city of New York. So far as disclosed by the evidence, their business had been reasonably prosperous down to the 1st day of October, 1896; and no one connected with the business, nor any one dealing with the firm, had reason to suppose that the

condition of the firm was other than what it appeared to be. Letters from some creditors are in evidence, requesting the Lessers to discount debts that had not yet matured, and Tobias Lesser testifies that the banks had curtailed the discount given to Lesser Bros., but apprehended insolvency is not ascribed as the reason. All obligations had been met as they became due down to October 2, 1896, when the acts were done that are here the subject of investigation. No creditor is produced who demanded his pay before the 1st of October, 1896, for the reason that the solvency of the firm was in doubt. Not one creditor whose debt was due had made any effort to secure the payment of the same. The testimony of Israel Lesser in the Metcalf Case was read in evidence. It sheds very little light on the transactions of October 2, 1896. Tobias Lesser had charge of the financial department; Simon, of the manufacturing department; and Israel was a traveling salesman. Tobias Lesser was manifestly the dominating spirit of the firm, and had the responsibility of the conduct of the business. Simon testified that prior to the 2d of October, 1896, he does not remember having any conversation with Tobias relative to the business of the firm, and he states that up to that time the business was going on as usual. On the afternoon of October 1, 1896, the three brothers held a conference. Neither the assets nor the liabilities of the firm were the subject of discussion, nor was the bookkeeper consulted as to the condition of their affairs; yet they promptly decided that they must fail. The following day, Friday, October 2, 1896, between 1 and 2 o'clock in the afternoon, at the request of Tobias, Simon went to the office of Blumenstiel & Hirsch, attorneys and counselors at law, to confess some judgments, make some transfers, and be served with some papers. He signed all the papers that were handed to him, and raised no objections. The Lessers at this time transferred all their good accounts to favored creditors, also transferred their individual real estate, and confessed judgments for an amount which they regarded so large that it was necessary to secure the confessed judgment creditors by transferring to them the balance of the accounts of Lesser Bros. After the three members of the firm had amicably joined in executing the confessions of judgments and the transfers of accounts, "a wrangle arose," and immediately Tobias and Israel Lesser brought an action against Simon Lesser, alleging that the firm was insolvent and unable to pay its debts, and also alleging (I now quote from the opinion of the appellate division in the Metcalf Case, Rumsey, J.; and, as I consider the portion of the opinion that I am about to quote as within the evidence adduced in the case at bar, I adopt the same)—

"That many of the accounts had been assigned to secure and protect certain creditors; that the parties to the action could not agree as to the manner in which the assets should be liquidated and divided, or as to the form of dissolution; that a large amount of debts owing by the firm were about to mature, and that there was danger that suits would be brought against them and judgments recovered, and in view of these facts it was important that a receiver of the assets should be appointed and the partnership dissolved; and the relief asked that a receiver should be appointed, and the parties be restrained from further disposing of, or in any manner interfering with, the assets. The transactions had on the 2d of October were not stated in this complaint, or in the affidavit accompanying it, nor was

there any intimation as to the true manner in, or purposes for, which the assets of the firm had been disposed of. The summons and complaint were served at once upon the defendant, who immediately proceeded to appear and consent to the appointment of a receiver, and the defendant Morris Moses was on the same day appointed a receiver of the firm. Moses says that he was never consulted as to his appointment; that he knew nothing about it until he saw mention of it in the papers the next morning, and received advices that he had been appointed from the security company that was to give a bond for him, and thereupon, without any consultation with either of the Lessers, he went to the office of the security company, gave the bond, and qualified and assumed his duties as receiver on the 3d of October. If this story of Moses is true, it necessarily follows that the parties to the action had procured him to be appointed receiver, and had done everything necessary to enable him to qualify, without advising him of the fact of his appointment. * * * No reason is apparent throughout this case why any one of these steps had been taken. The result of them was to prefer creditors to a small amount; to put out of the hands of those debtors a very large amount of assets which should have gone to the payment of all the creditors; and without any reason whatever, so far as appears, to have put every dollar of their visible assets in such a situation that the real creditors, other than those preferred, could not reach them."

From the month of January, 1896, down to the time of the transfers, there had been no catastrophe, and no reason is developed by the evidence why there should have been any material loss of assets. It is true that in this case we have more evidence on the question of assets than appeared in the Metcalf Case. The figures respecting the assets in the latter case were evidently exaggerated, and it must be said Lesser Bros. did not have the surplus in January, 1896, that is claimed by their statement to the commercial agency. I have given the testimony on this branch of the case very careful consideration, and have compared it with the testimony in the Metcalf Case; but an analytical discussion of the figures and circumstances bearing upon the amount of assets would occupy much space, and I deem it unnecessary. It is sufficient to state that in my opinion no adequate reason is given to warrant the conclusion that the firm was insolvent on October 2, 1896. Notwithstanding the additional evidence produced upon the trial here, it must still be said that no satisfactory explanation is given of the alleged loss of surplus. The important and material books of Lesser Bros. for the years 1895 and 1896 have disappeared. With the exception of a purchase ledger, there is no book whatever which gives any information as to the situation of the firm, and there is no book showing what accounts were owing to the firm. When all the evidence is carefully weighed, the good faith and honesty of the members of the firm of Lesser Bros. in the transactions which took place on the 2d of October, 1896, are gravely challenged, and I reach the conclusion that the transactions of that day constituted a scheme for the purpose of defrauding the creditors of Lesser Bros. who were not preferred.

How are the transfers of Lesser Bros. affected by their fraud? It is sought to bring the transactions in question here within the doctrine laid down in Galle v. Tode, 148 N. Y. 270, 42 N. E. 673, where the transactions were sustained. In that case the creditors pressed their claims and procured judgments in the usual way,—either by regular suit or by confession. I understand the principle laid down by the court of appeals in the Metcalf Case to be this, viz.: Where

creditors take no affirmative or independent action to collect their claims, but simply accept the advantage which the fraudulent debtor voluntarily gives them for his own purposes, and as part of the fraudulent scheme, the transactions cannot be allowed to stand. Under such circumstances, the court says, "the doctrine of Galle v. Tode would have no application." The court adds (referring to the rights of the favored creditors here):

"They put themselves under his [Tobias Lesser's] protection and into his hands. They allowed the fraudulent debtor to represent them in procuring the judgments, and his fraudulent purpose was properly imputed to them."

To Marcus A. Adler the firm assigned accounts to an amount over $30,000 to secure an alleged indebtedness of $22,500. Adler had been the superintendent of the manufacturing department. On the eventful October 2d, Tobias Lesser called Adler to his office and told him that he was "ruined." Adler now testifies that he knew little of the condition of the Lessers, and thought they were only temporarily "ruined." He, however, allowed Tobias Lesser to fix the sum due to him for the unexpired term of his contract, which still had 15 months to run, and took from him a check for $550, which Tobias handed to him, saying, "Let that close up the contract." At Tobias Lesser's suggestion, the closing up of the business with Adler was left in the hands of the attorney for the Lessers, Mr. Blumenstiel. It is the contention of the learned counsel for the defendant Adler that the assignment to him was not voluntarily made, but was made by reason of the pressure brought by Adler, and under stress of his efforts and demands I do not think the testimony supports this contention. The court of appeals held in the Metcalf Case, where Adler was a party, that Adler could not accept a voluntary payment made by the Lessers at their suggestion without making them his agents, and consequently imputing all fraud to him which existed on the part of the debtors. I am convinced, however, of the good faith of Adler. The testimony seems to me to be strikingly preponderating on this point. I think the Lessers honestly owed him the $22,500 that he claims. But the principle laid down by the court of appeals in the Metcalf Case makes it immaterial whether or not the accounts were transferred for bona fide loans. The court says, "The transfer was tainted with the vice that pervades the whole transaction." The evidence produced upon this trial, in my judgment, establishes no facts that can save Adler's claim from the operation of the principle of law just referred to. The plaintiff is entitled to judgment declaring that the assignment of accounts to Adler is void as to the plaintiff.

The transfers to the Cohens, Rebecca Berg, and the Nadels are similar to those in the case of Adler. The transfer of accounts to these defendants was made by the lessers voluntarily and at their own suggestion, and after the transferees had put themselves in the hands of Tobias Lesser for the purpose of carrying out the transfers. Some further testimony than appeared in the Metcalf Case was adduced here in behalf of these creditors. In my opinion, however, no facts were brought out that can relieve these particular defendants from the consequences of the fraudulent acts of the Lessers. The fraud of the three Lessers must be imputed to these defendants, and it invalidates

the transactions by which their claims were attempted to be secured. As to these defendants the plaintiff must succeed.

As to Tobias Lesser himself, as guardian of certain infants, Mrs. Marcus, and Bernard Moses, I again quote from the opinion of Mr. Justice Rumsey in the Metcalf Case, and adopt his statements and conclusions in the case at bar, as the evidence presents substantially the same state of facts here as in the Metcalf Case:

"Three creditors were selected to whom judgments were to be confessed. One of those was Tobias Lesser himself, as guardian of certain infants whose money it was said had been lent to the firm. The two others were Mrs. Marcus and Bernard Moses, who, it was said, had also lent money to the firm. Neither of these persons had demanded the payment of their loans, or had made any effort to collect them. On the afternoon of October 1st, after the conclusion had been reached by the partners to break up their business, Mrs. Marcus' son was informed that the firm must fail, and that they intended to confess a judgment to his mother to secure the money lent by Mrs. Marcus; and permission was asked that the firm might employ Mr. Blumenstiel, their attorney, to act as attorney for Mrs. Marcus to have the confession made. This was acceded to by Mr. Marcus, who says that he told his mother of the matter that night, and that she ratified what he had done. Bernard Moses, the other creditor to whom a judgment was confessed, had no knowledge whatever that anything of the kind was to be done until the 3d day of October, after the judgment had been confessed, and execution issued upon it to the sheriff. The whole transaction with regard to the confession of the judgments originated with Tobias Lesser, was set in motion by him, was carried out by him, and in doing it he acted for the judgment creditors precisely to the same extent as any other person would act who had been employed by them to secure their debts in that way."

The plaintiff must have judgment against these defendants as prayed for in the complaint.

The conveyances of real estate by two of the Lessers to the defendant Lilianthal must now be considered. The transfers were made to Lilianthal, in pursuance of an agreement made between himself and the Lessers, on the afternoon or evening of October 1, 1896. There is no doubt that he was a bona fide creditor of the firm. There is no evidence that he had any notice of the fraudulent intent of his grantors, or of the fraud that they were about to commit. I am somewhat puzzled in discussing this branch of the case by reason of the conflict in the opinion of the appellate division and of the court of appeals respecting the status of Lilianthal. I can find no substantial difference between the evidence adduced upon this trial, so far as it affects Lilianthal, and the evidence that was before the court in the Metcalf Case. I conclude, therefore, to adopt what the court of appeals said of the transaction with Lilianthal, and to hold that the conveyances in question were "tainted with the vice that pervades the whole transaction," and must be set aside. The quotation from the opinion of the court of appeals to which I refer is as follows, viz.:

"Lilianthal, like all the other parties referred to, simply followed the directions which the failing debtor gave to him. He did not take any independent action. He did not even ask for the conveyance, but merely accepted what was offered to him by the debtor. He knew that the latter was about to fail, and that he had many creditors. It is difficult to believe that a business man who has been tendered and receives a conveyance of the property of the failing debtor under such circumstances can be entirely innocent of the intent and purpose behind the transaction."

No new facts have been brought out on this trial that permit the trial court to follow a different ruling as to the receivers from the one that prevailed in the trial of the Metcalf Case. As to Lilianthal and the receivers, the plaintiff must have judgment, as demanded in the complaint.

The cases of Wm. Iselin & Co. and Greeley, Frost & Cushman remain to be disposed of. Different conditions existed as to them. Having in mind the position taken by the court of appeals, that vice pervades the whole transaction of October 2, 1896, I nevertheless feel satisfied, after a careful consideration of all the testimony, that the judgments in favor of these two creditors cannot truthfully be said to share the taint of the fraudulent scheme. At the time of the trial of the Metcalf Case these two creditors were not parties to that action. It will be borne in mind that the validity of the transfers heretofore discussed rests upon the principle set forth in the following quotation from the opinion of the court of appeals in the Metcalf Case, viz.:

"But here the creditors took no affirmative or independent action to collect their claims. They simply accepted the advantage which the fraudulent debtor voluntarily gave them for his own purposes, and as part of the fraudulent scheme. They put themselves under his protection and in his hands. They allowed the fraudulent debtor to represent them in procuring the judgments of transfers, and his fraudulent purpose was properly imputed to them."

It is asserted by the two creditors whose claims are now under consideration that they took affirmative and independent action to collect their claims through their regularly employed attorneys and agents, Messrs. Blumenstiel & Hirsch; that the debtors did not voluntarily give them the advantage, nor did they give it for their own purposes; that it was demanded from the debtors as a condition precedent to the attorneys in question entering into the employ of the Lessers. Tobias Lesser was not authorized by these creditors to make the confession of judgment. It was demanded and exacted by the attorneys and agents of the creditors in the same way as they might have demanded a check for the amount of the claim. It was not voluntary. It is established by the evidence that the duly retained attorneys of these two creditors, before they entered into the employ of the Lesser Bros., secured the payment in question, and that the judgment had been confessed before the fraudulent scheme was launched. If it can be said the plot had been already conceived by Tobias Lesser, there is no evidence that it was known to the attorneys who prepared the papers for the confession of judgments in behalf of the creditors. And beyond every doubt it must be said the condition of the Lessers, and the fact that any scheme of theirs was on foot, were unknown to these creditors. The undisputed evidence is that these attorneys (Messrs. Blumenstiel & Hirsch) had not accepted as yet the retainer of Lesser Bros. There is no sufficient evidence to warrant the conclusion that these attorneys knew the plan or scheme that Tobias Lesser had concocted. The reasonable inference, however, is that, when Tobias Lesser called upon the attorneys, the scheme subsequently developed had been conceived by him. But there is no inference that it was known to the attorneys. It is not a substantive wrong to conceive a

fraudulent scheme, if no steps are taken to carry it out. If Lesser Bros. did not concede to the demand of the attorneys for the creditors whose rights we are now considering, what reason had the attorneys to believe that whatever scheme the debtors had in mind would be undertaken? Whatever embarrassment there is in the question here presented arises from the fact that the attorneys of these two creditors immediately entered into the employment of the fraudulent debtors. It seems to me that the reasonable conclusion is that these attorneys, as the agents of these two creditors, took independent, affirmative action to collect their claims; that it was their right; and that these judgments do not fall under the condemnations declared in the case of Metcalf v. Moses. For these reasons, as to Iselin & Co. and Greeley, Frost & Cushman, I think the complaint must be dismissed, with costs.

Let counsel appear before me in trial term, part 8, any day this week, except Saturday, at 10:30 a. m., to agree upon the form of the decision and judgment.

Judgment accordingly.