# METCALF *v.* BARKER.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 57. Argued October 30, 1902.—Decided December 1, 1902.

The question in this case was whether under section 67 *f* of the bankruptcy act of 1898 where a final decree recovered within four months of the petition, but which was based on a judgment creditors' bill in equity filed long prior thereto, the creditor had a lien on the assets involved in the action which was superior to the title of the trustee in bankruptcy, or whether (as was held by the District Court) section 67 *f* prevented the complainant from acquiring any benefit from the lien, or the fund attached except through the trustee in bankruptcy *pro rata* with other creditors. *Held,* that while the lien created by a judgment creditors' bill is contingent in the sense that it may possibly be defeated by the event of the suit, it is in itself, and so long as it exists, a charge, a specific lien, on the assets, not subject to being divested save by payment of the judgment sought to be collected, and a judgment or decree in enforcement of an otherwise valid preexisting lien is not the judgment denounced by the bankruptcy statute which is plainly confined to judgments creating liens.

When therefore a judgment creditor files his bill in equity long prior to the bankruptcy of the defendant, thereby obtaining a lien on specific assets, and diligently prosecutes it to a final judgment, he acquires a lien on the property of the bankrupts which is superior to the title of the trustee, and a District Court of the United States does not have jurisdiction to make an order in bankruptcy proceedings against the defendants enjoining him from enforcing such lien.

See also *Pickens* v. *Roy,* decided this term, p. 177, *post.*

THE certificate in this case is as follows:

" This matter came before this court upon a petition of Metcalf Brothers & Co. to superintend and revise in matter of law certain proceedings of the District Court of the United States for the Southern District of New York, wherein an order was made by said District Court enjoining the petitioners, Metcalf Brothers & Co., from taking any further proceedings under any judgment obtained by them in the Supreme Court of the State of New York in a judgment creditors' action wherein certain transfers made by the bankrupts had been set aside as to them

as fraudulent and void, and wherein receivers of the property of the bankrupts appointed by the said Supreme Court had been directed to pay to them the amount of their judgments at law upon which their said judgment creditors' action was founded.

" For its proper decision of the matter this court desires the instruction of the Supreme Court upon the questions of law hereinafter stated, and hereby certifies the same to the Supreme Court of the United States for that purpose."

### " *Statement of Facts.*

" On the 2d of October, 1896, Lesser Brothers, subsequently adjudged bankrupts, who were copartners, being then insolvent, transferred all their property, copartnership and individual, to certain favored creditors. All their outstanding accounts, being copartnership property, they transferred by instruments of assignment to Marcus A. Adler and others. They confessed various judgments in the Supreme Court of the State of New York in favor of Bernhard Moses and others, upon which executions were at once issued to the sheriff of the county of New York, who levied thereunder on all their tangible personal property, consisting of clothing material and stock in trade. This also was copartnership property, and, with the book accounts, comprised all their property except a piece of real estate owned by Israel Lesser individually and a ground lease of another piece of real estate owned by Tobias Lesser individually. These two pieces of real estate the individuals owning them conveyed to Joseph Lilianthal.

" After making these transfers and after the levy by the sheriff under the executions issued upon the confessed judgments and on the same day, by a fraud upon the court, in a collusive action in the Supreme Court of New York to dissolve the partnership, they procured the appointment of a receiver of the partnership property, Morris Moses, who was nominated by and in collusion with them. Subsequently a receiver nominated by certain creditors, James T. Franklin, was associated with Mr. Moses by the same court.

" Various creditors of the bankrupts immediately commenced

actions of replevin to recover portions of the goods in the hands of the sheriff. Their claims were conflicting with each other and with those of the confessed-judgment creditors, and in an action brought in the Supreme Court of New York by the receivers an order was made restraining the sale by the sheriff under the executions, directing a sale by receivers (Mr. Moses and Mr. Franklin being also appointed such receivers in that action), and that the latter should hold the proceeds of the sale subject to the claims of all parties, such claims to be determined in that action. Pursuant to this order, the goods were sold, and the receivers so appointed now hold the proceeds thereof. This order was made November 23, 1896. The action is still pending, undetermined.

"On the 22d day of October, 1896, and the 29th day of October, 1896, Metcalf Brothers & Co. procured judgments in the Supreme Court of the State of New York against the Lessers for $930.21 and $2547.80 respectively, upon which executions were issued and returned unsatisfied.

"On the 17th day of December, 1896, Metcalf Brothers & Co. commenced a judgment creditors' action in the Supreme Court of the State of New York, which came to trial on the 17th day of December, 1897, and as a result of which the transfers to which reference has been made and the proceedings for the appointment of the receivers were adjudged fraudulent and void as to them. The court, however, set aside the transfers of the copartnership property, not only in favor of Metcalf Brothers & Co., but also in favor of the receivers. It set aside the transfer of the real estate in favor of Metcalf Brothers & Co. alone. Judgment was entered on this decision April 6, 1898.

"This judgment determined that the proceeds of the sale of the tangible property then in the hands of the receivers and the outstanding accounts or their proceeds in the hands of the transferees (to be accounted for under the judgment to the receivers) were to be administered by the receivers for the benefit of all the creditors of the copartnerhip equally, including Metcalf Brothers & Co., while the real estate transferred

became subject to the lien of the judgments of Metcalf Brothers & Co. on October 22d and 29th, 1896.

"All parties except the receivers appealed from this judgment to the appellate division of the Supreme Court of New York; that court affirmed the judgment of the trial court as to the fraud, but reversed it in so far as it granted relief in favor of the receivers. It directed the payment by the receivers to Metcalf Brothers & Co. of the amount of their judgments out of the money in the receivers' hands, and, since Metcalf Brothers & Co. were to be so paid, it reversed the judgments in their favor against Adler, one of the transferees of the accounts. Upon the ground that there was no proof of fraud, it also reversed it against the transferee of the real estate.

"This decision was embodied in an instrument made the 30th day of December, 1898, entitled an 'order,' but which, after reciting the necessary facts, 'ordered and adjudged' that the judgment of the trial term be modified as stated, and also 'ordered and adjudged' that the transfers in question, except the transfer of the real estate, were fraudulent and void as to Metcalf Brothers & Co.; that the receivers be, and they were thereby, directed to pay to Metcalf Brothers & Co. the amount of their judgments, with costs, and that final judgment should be entered in accordance therewith. This instrument was filed in the office of the clerk of the appellate division of the Supreme Court of New York, and was the only paper signed by that court or kept in its records. A certified copy of it was transmitted to the clerk of the Supreme Court, upon which, after the costs had been taxed, a final judgment was entered by the latter clerk on the 31st day of January, 1899, following in all essential respects its verbiage. The delay in the entry of final judgment was caused by various motions before the appellate division for reargument.

"On the 12th day of May, 1899, Lesser Brothers filed in the District Court of the United States for the Southern District of New York a petition to be adjudged bankrupts, and they were adjudicated bankrupts on that day. Subsequently, and

on the 7th day of June, 1899, Benjamin Barker, Esq., was appointed their trustee in bankruptcy.

" From the judgment of the appellate division in the action brought by Metcalf Brothers & Co. all parties except Lilianthal, the transferee of the real estate, appealed to the Court of Appeals of the State of New York. That court affirmed the judgment of the appellate division in favor of Metcalf Brothers & Co., and also restored to them the rights awarded them by the judgment of the trial court, of which they had been deprived by the appellate division. The final result of the litigation was that the transfers in question were declared fraudulent and set aside in favor of Metcalf Brothers & Co. only; that as to all other persons they were (until impeached in a proper action) valid; that the receivers were directed to pay out of the funds in their hands to Metcalf Brothers & Co. the amount of their judgments, and that those creditors could also proceed for the collection of their judgments, if necessary, against the transferees of the accounts and real estate.

" The decision of the Court of Appeals was made on the 6th of February, 1900. The remittitur from that court to the Supreme Court was received and filed on the 12th day of March, 1900. On the 8th day of March, 1900, the bankrupts' trustee, upon affidavits of himself and his counsel, procured from the District Court of the United States for the Southern District of New York an order, entitled in the bankruptcy proceeding, requiring Metcalf Brothers & Co. to show cause on the 13th day of March, 1900, why a writ of injunction should not issue enjoining them from taking any further proceedings under any judgment in their creditors' action and so enjoining them in the interim. This order provided for its service upon the members of the firm of Metcalf Brothers & Co., but it was not in fact served upon any one but their attorneys in their judgment creditors' action. Metcalf Brothers & Co. appeared specially upon the return day of the order to show cause and filed a written objection that the District Court was without jurisdiction, power, or authority over them in the premises; that no action or other proceeding was pending or had ever been begun against them in any way relating to the subject matter of the

proposed injunction ; that they had not appeared in or been made a party to any proceeding founded upon the petition of Lesser Brothers to be adjudged bankrupts, and that they had not been brought into court on any process or been given any notice of the order to show cause except that their attorneys in their creditors' action had received a copy thereof, and especially that no statute conferred upon the District Court jurisdiction, power, or authority to issue any writ of injunction in the premises.

" Their objection was overruled, and after an argument of the merits of the application the injunction was continued.

" Subsequently Metcalf Brothers & Co. presented a petition to this court to superintend and revise in matter of law the said proceedings of the District Court.

## " *Questions Certified.*

" Upon the facts above set forth, the questions of law concerning which this court desires the instruction of the Supreme Court for its proper decision are :

" 1. Had the District Court of the United States for the Southern District of New York jurisdiction to make the injunction order in question ?

" 2. If said court had jurisdiction to restrain Metcalf Brothers & Co. from receiving the fund in question, could such jurisdiction be exercised by summary proceedings ?

" 3. Did Metcalf Brothers & Co. by the commencement of their creditors' action acquire a lien on the property of the bankrupts superior to the title of the trustee thereto ?

" 4. If the lien acquired by the commencement of the creditors' action was inchoate merely, was it perfected by a judgment obtained more than four months prior to the filing of the petition of the Lessers in bankruptcy within the meaning of the provisions of the act of Congress of July 1, 1898, known as the bankruptcy act ?

" 5. If the lien acquired by the commencement of the creditors' action was inchoate merely, was the judgment in the creditors' action, whenever obtained, one which is avoided by

any of the provisions of the act of Congress of July 1, 1898, known as the bankruptcy act?"

Mr. *Nelson S. Spencer* for petitioners.

Mr. *Otto T. Hess* and Mr. *McCready Sykes* for respondent.

MR. CHIEF JUSTICE FULLER, after making the foregoing statement, delivered the opinion of the court.

Metcalf Brothers & Company, judgment creditors of Lesser Brothers, commenced their creditors' suit in the Supreme Court of New York, December 17, 1896. The case came to trial December 17, 1897, and decree was rendered April 6, 1898. 22 Misc. Rep. 664. On appeal the appellate division affirmed the judgment of the trial court in part, and reversed it in part, and directed the payment by the receivers to Metcalf Brothers & Company of the amount of their judgments out of the money in the receivers' hands. 35 App. Div. 596. This decree or judgment was embodied in an order dated December 30, 1898, but the clerk of the Supreme Court appears not to have entered it until January 31, 1899. The decision of the Court of Appeals, 161 N. Y. 587, was made February 6, 1900, and the remittitur was received and filed in the court below March 12, 1900.

The bankruptcy law was approved July 1, 1898. May 12, 1899, Lesser Brothers filed their petition in bankruptcy and were adjudicated bankrupts, and Barker was appointed trustee June 7, 1899. March 8, 1900, the bankrupts' trustee procured from the District Court an order entitled in the bankruptcy proceedings requiring Metcalf Brothers & Company to show cause on March 13 why a writ of injunction should not issue enjoining them from taking any further proceedings under any judgment in their creditors' action, and so enjoining them in the interim, which injunction, after argument on the merits, was continued. No question arises here in respect of real estate, and on the case stated in the certificate the property affected was equitable assets. There had been tangible personal property,

subject to levy and sale under execution, but this had been previously sold by an order of the Supreme Court of New York and the proceeds were held by receivers.

The general rule is that the filing of a judgment creditors' bill and service of process creates a lien in equity on the judgment debtor's equitable assets. *Miller* v. *Sherry*, 2 Wall. 237; *Freedman's Savings & Trust Company* v. *Earle*, 110 U. S. 710. And such is the rule in New York. *Storm* v. *Waddell*, 2 Sandf. Ch. 494; *Lynch* v. *Johnson*, 48 N. Y. 27; *First National Bank* v. *Shuler*, 153 N. Y. 163. This was conceded by the District Court, but the court held that the lien so created was " contingent upon the recovery of a valid judgment, and liable to be defeated by anything that defeats the judgment, or the right of the complainants to appropriate the fund;" that " such a contingent or equitable lien, it is evident, cannot be superior to the judgment on which it depends to make it effectual, but must stand or fall with the judgment itself;" and that " section 67 *f*, therefore, in declaring that a judgment recovered within four months ' shall be deemed null and void,' etc., necessarily prevents the complainants from acquiring any benefit from the lien, or the fund attached, except through the trustee in bankruptcy *pro rata* with other creditors," it being also held that, although the judgment at special term was rendered more than four months before the filing of the petition, yet that the judgment of the appellate division, as affirmed by the Court of Appeals, was within the four months. 100 Fed. Rep. 433.

Assuming that the judgment at special term is to be disregarded, and that the judgment of the appellate division was entered within the four months, it will be perceived that if the views of the District Court were correct, the third question propounded should be answered in the negative, while if incorrect, that question should be answered in the affirmative.

Doubtless the lien created by a judgment creditors' bill is contingent in the sense that it might possibly be defeated by the event of the suit, but in itself, and so long as it exists, it is a charge, a specific lien, on the assets, not subject to being divested save by payment of the judgment sought to be collected.

The subject was fully discussed and the effect of bankruptcy proceedings considered by Vice Chancellor Sandford in *Storm* v. *Waddell,* 2 Sandf. Ch. 494, which has been so repeatedly recognized with approval as to have become a leading case.

As Mr. Justice Swayne remarked in *Miller* v. *Sherry,* the commencement of the suit amounts to an equitable levy, 2 Wall. 249 ; or, in the language of Mr. Justice Matthews, in *Freedman's Savings & Trust Company* v. *Earle,* " It is the execution first begun to be executed, unless otherwise regulated by statute, which is entitled to priority. The filing of the bill, in cases of equitable execution, is the beginning of executing it." 110 U. S. 717. And the right to payment out of the fund so vested cannot be affected by a subsequent transfer by the debtor, *McDermutt* v. *Strong,* 4 Johns. Ch. 687, or taken away by a subsequent discharge in bankruptcy. *Hill* v. *Harding,* 130 U. S. 699 ; *Doe* v. *Childress,* 21 Wall. 642 ; *Eyster* v. *Gaff,* 91 U. S. 521 ; *Peck* v. *Jenness,* 7 How. 612.

*Kittredge* v. *Warren,* 14 N. H. 509, was relied on as to the effect of attachments on mesne process in New Hampshire in *Peck* v. *Jenness.* And it may be remarked that Chief Justice Parker's vigorous discussion in that case of the point that the attachment lien was not contingent on a subsequent judgment is *a fortiori* applicable in cases where the prior establishment of the creditor's claim is the foundation of the creditor's suit.

Granting that possession of the power " to establish uniform laws on the subject of bankruptcies" enables Congress to displace these well-settled principles and to divest rights so acquired, we do not think that Congress has attempted to do so.

Section 67*f* provides : " That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall, on due notice, order that the right under such levy, judgment, attachment, or other lien

shall be preserved for the benefit of the estate; and thereupon the same may pass to and shall be preserved by the trustee for the benefit of the estate as aforesaid. And the court may order such conveyance as shall be necessary to carry the purposes of this section into effect."

In our opinion the conclusion to be drawn from this language is that it is the lien created by a levy, or a judgment, or an attachment, or otherwise, that is invalidated, and that where the lien is obtained more than four months prior to the filing of the petition, it is not only not to be deemed to be null and void on adjudication, but its validity is recognized. When it is obtained within four months the property is discharged therefrom, but not otherwise. A judgment or decree in enforcement of an otherwise valid preëxisting lien is not the judgment denounced by the statute, which is plainly confined to judgments creating liens. If this were not so the date of the acquisition of a lien by attachment or creditor's bill would be entirely immaterial.

Moreover other provisions of the act render it unreasonable to impute the intention to annul all judgments recovered within four months.

By section 63a, fixed liabilities evidenced by judgments absolutely owing at the time of the filing of the petition, or founded upon provable debts reduced to judgments after the filing of the petition and before the consideration of application for discharge, may be proved and allowed, while under section 17 judgments in actions of fraud are not released by a discharge, and other parts of the act would be wholly unnecessary if section 67f must be taken literally.

Many of the District Courts have reached and announced a similar conclusion : *In re Blair*, 108 Fed. Rep. 529 ; *In re Beaver Coal Company*, 110 Fed. Rep. 630 ; *In re Kavanaugh*, 99 Fed. Rep. 928 ; *In re Pease*, 4 Amer. Bank. Rep. 547 ; as have also the Supreme Court of Rhode Island and the Chancery Court of New Jersey in well-considered decisions. *Doyle* v. *Heath*, 22 R. I. 213 ; *Taylor* v. *Taylor*, 59 N. J. Eq. 86. And see *Wakeman* v. *Throckmorton*, 51 Atl. Rep. 554.

As under section 70a, e, and section 67e, the trustee is vested with the bankrupt's title as of the date of the adjudication, and

subrogated to the rights of creditors, the foregoing considerations require an affirmative answer to the third question, but in answering the first question some further observations must be made. This creditors' action was commenced December 17, 1896, more than eighteen months before the passage of the bankruptcy act, and was prosecuted with exemplary diligence to final and complete success in the judgment of the Court of Appeals. At this point the bankruptcy court intervened and on summary proceedings enjoined Metcalf Brothers & Company from receiving the fruits of their victory. The state courts had jurisdiction over the parties and the subject matter, and possession of the property. And it is well settled that where property is in the actual possession of the court, this draws to it the right to decide upon conflicting claims to its ultimate possession and control.

In *Peck* v. *Jenness*, 7 How. 612, the District Court had decided that the lien of an attachment issued out of a court of New Hampshire was defeasible and invalid as against an assignee in bankruptcy. But this court held that this was not so, and that the District Court had no supervisory power over the state courts, and Mr. Justice Grier said: " It is a doctrine of law too long established to require a citation of authorities, that, where a court has jurisdiction, it has a right to decide every question which occurs in the cause, and whether its decision be correct or otherwise, its judgment, till reversed, is regarded as binding in every other court; and that, where the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another court. These rules have their foundation, not merely in comity, but on necessity. For if one may enjoin, the other may retort by injunction, and thus the parties be without remedy; being liable to a process for contempt in one, if they dare to proceed in the other. . . . The fact, therefore, that an injunction issues only to the parties before the court, and not to the court, is no evasion of the difficulties that are the necessary result of an attempt to exercise that power over a party who is a litigant in another and independent forum." The rule indicated was applied under the act of 1841 in *Clarke* v. *Rist*, 3

McLean, 494; under the act of 1867, by Mr. Justice Miller in *Johnson*. v. *Bishop*, Woolworth, 324, and by Mr. Justice Nelson, in *Sedgwick* v. *Menck*, 21 Fed. Cases, 984, and under the act of 1898, among other cases, by the Circuit Court of Appeals for the Fourth Circuit in *Frazier* v. *Southern Loan and Trust Company*, 99 Fed. Rep. 707, and *Pickens* v. *Dent*, 106 Fed. Rep. 653.[1]

*White* v. *Schloerb*, 178 U. S. 542, proceeded on the familiar doctrine that property in the custody of a court of the United States cannot be taken out of that custody by any process from a state court, and the jurisdiction of the District Court sitting in bankruptcy by summary proceedings to maintain such custody was upheld. Mr. Justice Gray, speaking for the court, said: "By section 720 of the Revised Statutes, 'The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy.' Among the powers specifically conferred upon the court of bankruptcy by section 2 of the bankrupt act of 1898 are to '(15) make such orders, issue such process, and enter such judgments, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this act.' 30 Stat. 546. And by clause 3 of the Twelfth General Order in Bankruptcy applications to the court of bankruptcy 'for an injunction to stay proceedings of a court or officer of the United States, or of a State, shall be heard and decided by the judge; but he may refer such an application, or any specified issue arising thereon, to the referee to ascertain and report the facts.' 172 U. S. 657. Not going beyond what the decision of the case before us requires, we are of opinion that the judge of the court of bankruptcy was authorized to compel persons, who had forcibly and unlawfully seized and taken out of the judicial custody of that court property which had lawfully come into its possession as part of the bankrupt's property, to restore that property to its custody."

This cautious utterance—and courts must be cautious when dealing with a conflict of jurisdiction—sustains as far as it goes

---

[1] Affirmed by this court *sub nomine Pickens* v. *Roy*, p. 177, *post*.

the converse of the proposition when presented by a different state of facts.

We are of opinion that the jurisdiction of the District Court to make the injunction order in question cannot be maintained. *Louisville Trust Company* v. *Comingor*, 184 U. S. 18, 26.

The first question will be answered in the negative, and the third question in the affirmative, and it is unnecessary to answer the other questions.

*Certificate accordingly.*