## In re ADLER.

## In re NINTH NAT. BANK.

(Circuit Court of Appeals, Second Circuit. March 2, 1906.)

No. 111.

1. BANKRUPTCY—INJUNCTION—STAY OF CONTEMPT PROCEEDINGS.

Under Bankr. Act July 1, 1898, c. 541, §§ 9, 11, 30 Stat. 549 [U. S. Comp. St. 1901, pp. 3425, 3426], it is the duty of a court of bankruptcy to stay contempt proceedings against a bankrupt, in a civil suit against him in a state court on a debt or claim from which his discharge would be a release for twelve months, or until his right to a discharge has been determined.

2. SAME—DEBTS RELEASED BY DISCHARGE—FRAUD WHILE ACTING IN FIDUCIARY CAPACITY.

A judgment had been rendered against a bankrupt in a creditor's suit in a state court, requiring him to pay over the amount of the proceeds of certain accounts which had been assigned to him by a debtor as security and collected by him; the court holding that, while there was no actual fraud on his part, the transfer of the accounts was fraudulent in law and voidable. Held, that his indebtedness to the judgment creditors of his debtor evidenced by the judgment was not one created by his fraud "while acting in a fiduciary capacity," within the meaning of Bankr. Act July 1, 1898, c. 541, § 17a, cl. 4, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3428], but was one which could be proved in bankruptcy and which would be released by his discharge, and, the state court having acquired no lien upon any specific property or fund which gave it priority of jurisdiction, contempt proceedings therein to enforce payment of the judgment were properly stayed by the bankruptcy court.

Lacombe, Circuit Judge, dissenting.

Petition for Revision of Proceedings of the District Court of the United States for the Southern District of New York.

This is a petition by the Ninth National Bank of New York to review two orders made by the District Court for the Southern District of New York. The first of these orders is dated April 11, 1905, and is as follows:

"Ordered, that all proceedings in a certain suit in the New York Supreme Court, County of New York, entitled 'Ninth National Bank, plaintiff, against Marcus A. Adler, impleaded with others, defendants,' upon the part of the plaintiff in said action and its attorneys, agents and servants, be, and they are and each·of them is hereby stayed as against said Marcus A. Adler for the space of twelve months from the date of the adjudication herein, or if within that time the said bankrupt shall apply for a discharge, then until the question of such discharge shall be determined. And that said plaintiff in said action and its attorneys, agents and servants be, and they are and each of them is hereby, enjoined and restrained during said period from further proceeding in said action, and particularly from proceeding in said proceeding to punish the above-named bankrupt Marcus A. Adler as and for a civil contempt of said Supreme Court."

The second order is dated May 19, 1905, and is an order denying a motion to vacate the order of April 11, 1905. Adler was adjudicated a bankrupt April 10, 1905.

Nelson S. Spencer, for petitioner.

Charles Strauss, for bankrupt.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

COXE, Circuit Judge. The discussion at the bar and in the briefs has, we think, taken a much wider range than is warranted by the facts. The order complained of simply restrains, during the pendency of the bankruptcy proceedings, a judgment creditor in the state court from attempting to enforce its judgment by proceedings to punish the bankrupt for contempt.

The order was evidently granted under section 11 of the law (Act July 1, 1898, c. 541, 30 Stat. 549 [U. S. Comp. St. 1901, p. 3426], which provides that a suit, founded upon a claim from which a discharge would be a release, which is pending at the date of filing the petition, may be stayed until twelve months after the date of adjudication, or, if application be duly made for a discharge, then until the question of such discharge is determined.

It is the obvious scheme of the law to protect the bankrupt during the pendency of the proceedings from being harassed by process issuing from the state courts in civil actions. His presence may be required at any time before the court of referee, and section 7 (30 Stat. 548 [U. S. Comp. St. 1901, p. 3424]), defining the duties of bankrupts, directs him to perform acts which practically require his presence within call of the court at all times during the pendency of the proceedings. It is manifest that it will be impossible for him to comply with "all lawful orders of the court" if he be required at the same time to obey the orders of the state court, and, a fortiori, if he be actually imprisoned on civil process, issued out of the state court. The bankruptcy act could not be administered under such conditions. ·

Section 9 (30 Stat. 549 [U. S. Comp. St. 1901, p. 3426]), provides that "a bankrupt shall be exempt from arrest upon civil process" except inter alia, when issued from a state court "upon a debt or claim from which his discharge in bankruptcy would not be a release."

General order 12 (32 C. C. A. xvi, 89 Fed. vii) provides that from the date when he is required to appear before the referee the bankrupt shall be subject to the orders of the court in all matters relating to his bankruptcy "and may receive from the referee a protection against arrest, to continue until the final adjudication on his application for a discharge," and general order 30 (32 C. C. A. xxx, 89 Fed. xii) requires the District Court to discharge on habeas corpus a bankrupt imprisoned upon process in any civil action for the collection of a claim provable in bankruptcy.

It would seem, therefore, that it was the duty of the court to stay the contempt proceedings if the claim were one which could be proved and discharged in bankruptcy; surely to do so was within the sound discretion of the judge.

Section 17 provides that a discharge shall release a bankrupt from all his provable debts except those specifically described in the section. We think the only exception necessary to consider is the last (clause 4, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3428]), which excepts such debts as "were created by the bankrupt's fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity."

The Supreme Court has held that this subdivision is limited to frauds, embezzlements, misappropriations or defalcations of the bankrupt while acting in an official character or in a fiduciary capacity and does not apply to other debts or obligations fraudulently created. Bullis v. O'Beirne, 195 U. S. 606, 25 Sup. Ct. 118, 49 L. Ed. 340; Crawford v. Burke, 195 U. S. 176, 25 Sup. Ct. 9, 49 L. Ed. 147.

There is here no pretense of embezzlement, misappropriation or defalcation; it must, therefore, be made to appear that the debt was created by Adler's fraud while acting in a fiduciary capacity. That it was not such a debt will be apparent the moment the facts regarding it are stated.

In 1896 the firm of Lesser Brothers owed the bankrupt $22,500, and to secure this indebtedness they transferred to him outstanding accounts aggregating about $30,000.

The petitioner, a judgment creditor of Lesser Brothers, began an action in the nature of a creditors' bill in the state court to set aside this, as well as other transfers, as fraudulent and void as against creditors. The action resulted in a final judgment, dated January 17, 1905, finding that Adler had collected $29,897 from said assigned accounts and directing him to pay that amount into court to be distributed among the parties entitled to receive it "as the court shall hereafter direct."

The court expressly exonerated Adler from actual fraud, the judgment proceeding on the theory that the transaction was constructively fraudulent, the acts of Lesser Brothers being attributable to the transferees.

Adler was a creditor of the Lessers and accepted the security transferred to him, but he occupied no position of trust in relation to them or the petitioner.

The debt of the bankrupt is a fixed liability evidenced by a judgment absolutely owing at the time of the filing of the petition and can be proved under section 63a, subd. 1 (30 Stat. 562 [U. S. Comp. St. 1901, p. 3447]). The proposition that it cannot be proved because there is no one to prove it seems to us untenable. Undoubtedly it is a liability due and owing from the bankrupt to the petitioner and the other creditors of the Lessers designated by the state court.

It is not necessary here to determine whether the petitioner or an officer appointed by the state court should make the proof, but that a valid proof can be made we have no doubt.

The petitioner relies upon the decisions of the Supreme Court in Metcalf v. Barker, 187 U. S. 165, 23 Sup. Ct. 67, 47 L. Ed. 122, and Pickens v. Roy, 187 U. S. 177, 23 Sup. Ct. 78, 47 L. Ed. 128, but in our view the law as there enunciated has no application to the facts in hand. This is not a case where there is a controversy over the question whether the state court or the court in bankruptcy shall hold property or administer a fund adversely claimed. It is not a case where a lien actual or contingent has been asserted. There is no such property, no such fund and no such lien. About this proposition there can be no doubt. The brief of the petitioner contains the following:

"There never was any specific property in Adler's hands to which the equitable lien of the bank could attach. The property of the Lessers transferred to Adler consisted of accounts, which had been collected by Adler long prior to the commencement of the judgment creditors' action. No receiver could be appointed of these accounts even if it were necessary or proper."

If the state court had acquired complete jurisdiction over property, transferred by the Lessers to Adler, prior to the adjudication, interference by the District Court would doubtless have been unlawful.

Although the order complained of is, perhaps, too broad, it is obvious that its sole purpose was to insure to the bankrupt inviolability from arrest during the pendency of the bankruptcy proceeding.

In all other respects, if the facts warrant, the state court will find no difficulty in exercising the jurisdiction confirmed by the Supreme Court in the cases cited and can proceed without interference to administer any property in its hands or upon which a valid lien has been established, precisely as if the order of April 11, 1905, had never issued.

The orders of the District Court should be affirmed with costs.

LACOMBE, Circuit Judge. I dissent from the decision of the majority of the court, believing such decision to be totally at variance with the principles laid down by the Supreme Court in Metcalf v. Barker, 187 U. S. 165, 23 Sup. Ct. 67, 47 L. Ed. 122. Why, in a proper case, an equitable lien will not attach to debts due from business debtors, in part collected and in part in process of collection, I do not understand.