## BARTLETTE v. MICHEL BROTHERS

---

(April 12, 1925, Opinion and Decree.)
(April 26, 1926, Rehearing Refused.)

---

(*Syllabus by the Court*)

1. **Louisiana Digest—Bankruptcy—Par. 19.**

When the proceeds of sale under execution in a state court are paid over by the sheriff to the plaintiff in execution and within four months thereafter the defendant is adjudged a bankrupt in the Federal Court, the sheriff's sale cannot be set aside as void under Sec. 67 (f) of the bankruptcy law, nor can the proceeds in the hands of the plaintiff be recovered by the trustee in bankruptcy as an illegal preference under Sec. 60 (b) of the bankruptcy statute unless it is shown that the plaintiff knew or had reasonable grounds to know that the bankrupt was insolvent.

2. **Louisiana Digest—Bankruptcy—Par. 19, 30.**

The fact that the bankrupt was fugitive from justice and such fact known and alleged by the plaintiff in execution creates a presumption of dishonesty but not of insolvency of the debtor and cannot form the basis of a legal conclusion that plaintiff in execution knew or ought to have known of the bankrupt's insolvency.

Appeal from Civil District Court, Div. "C", Hon. Percy Saint, Judge.

Action by T. J. Bartlette against Michel Brothers.

There was judgment in favor of plaintiff for $317.53 and defendant appealed.

Judgment reversed.

Jos. H. Brewer, of New Orleans, attorney for plaintiff, appellee.

F. Rivers Richardson, of New Orleans, attorney for defendant, appellant.

## OPINION

WESTERFIELD, J. This is a suit by a trustee in bankruptcy to recover $572.52 as the amount of an alleged illegal preference.

There was judgment in plaintiff's favor for $317.53 and defendant has appealed.

On November 17, 1919, the plaintiff firm alleging that Fernand B. Cavalier was indebted to it in the sum of $1515, sued out a writ of attachment upon the ground that Cavalier had left the state permanently and was a fugitive from justice. After considerable litigation with Cavalier's wife and others claiming ownership of the property seized (household goods) the sheriff realized $572.53 which amount on March 17, 1920, was paid over to the plaintiff. On April 10, 1920, involuntary bankruptcy proceedings were filed against Ferdinand Cavalier and his adjudication as a bankrupt followed on May 19, 1920. T. J. Bartlette, the present plaintiff, brought this suit on July 3, 1920, he having in the meantime been appointed trustee.

Was the money received by defendants as a result of the attachment proceeding an illegal preference under the Federal Bankruptcy Act is the question we are called upon to determine.

Section 67 (f) of the Bankruptcy Act as amended reads as follows:

"That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void

in case he is adjudged a bankrupt and the property affected by the levy, judgment, attachment or other lien shall be deemed wholly discharged and released from the same and shall pass to the trustee as a part of the estate of the bankrupt * * *. Provided that nothing herein contained shall have the effect to destroy or impair the title obtained by such levy, judgment, or other lien of a bona fide purchaser for value who shall have acquired the same without notice or reasonable cause for inquiry."

It will be observed that it is the lien obtained by "all levies, judgments, attachments" through legal proceedings that is void, and only when obtained within four months of bankruptcy, 187 U. S. 165. The property of the bankrupt is by operation of this section of the law relieved of the lien and passes to his trustee unencumbered. And when the property has been sold and the proceeds are yet in the hands of the sheriff, the trustee is entitled to such proceeds, 5th Am. Bank Reports 352. But when the lien is satisfied by the payment to the judgment creditor the proceedings in the state court are complete and neither the property nor the proceeds can be reached by the trustee under 67 (f) of the bankruptcy act.

"This subsection 67 (f) is not applicable where the money collected has already been paid to the judgment creditor as it does not operate to restore and then vacate a lien which no longer exists." Collier on Bankruptcy, vol. —, p. 1589.

In a New York case it was held that:

"While proceedings are pending for the enforcement of a lien created by a judgment or otherwise and before the lien is in fact satisfied by the lienor receiving the amount thereof doubtless the trustee in bankruptcy has the right to avoid the lien or follow the proceeds of the sale of the property to which the lien attached until they are actually paid over to the lienor. Such has been the interpretation placed upon this section by the Bankruptcy Court matter of Kennedy, 2 Am. B. R., 494.

"Until the avails of the sale actually reach the possession of the judgment creditor the proceeding to enforce the judgment may still be regarded as incomplete but when the proceeds are paid over, the lien of a judgment is in fact satisfied."

Levor vs. Trustee, 8th Am. B. R. 459.

In the U. S. District Court of Oregon, Judge Wolverton held after citing the Levor case (supra) that "Where the proceeds of an execution sale have been paid over to the judgment creditor who was the purchaser before the filing of an involuntary petition in bankruptcy against the judgment debtor, his trustee cannot by summary proceedings compel a return of the property or its proceeds." In re Bailey, 16 Am. B. R. 289 (Syllabus). See also In re Resnek, 21 Am. B. R. 740.

In the case of In re Weitzel, 191 Fed. 463, the court said:

"The most serious objection is urged to the creditor's claim upon the strength of the decision of In re Kenney, 105 Fed. 897, 45 C. C. A. 113, in which the Circuit Court of Appeals for this Circuit decided that, under section 67 of the Bankruptcy Law, a judgment obtained within four months prior to the filing of the petition was made null and void by the adjudication in bankruptcy and hence that money held by a judgment creditor as the proceeds of the sales under execution could be taken by the trustee as the property of the bankrupt, upon the theory that the right to the money had been destroyed by rendering the judgment null and void. Upon appeal to the Supreme Court of the United States, this decision was affirmed in Clarke vs. Larremore, 188 U. S. 486, 23 Sup. Ct. 363, 47 L. Ed. 555, upon a statement of facts by the Supreme Court showing that the sheriff in the case in question had the proceeds of the sale still in his hands. In other words, that the situation was yet in such a condition as would be covered by the word 'levy' or 'lien'. The Supreme Court expressly avoids deciding whether the bankruptcy proceedings could affect a judgment and execution if payments had been made to the execution creditor, and that is the question we have in the present case.

"In as much as payment of the judgment to the creditor by the sheriff wipes out the lien, and the judgment itself, to the extent of the execution levy, is vacated by payment so that it no longer exists, it is difficult to see how the provisions of section 67 of the Bankruptcy Statute, could operate to the extent of requiring a repayment of the money.

"In the case of Clarke vs. Larremore, referred to in that opinion, Mr. Justice Brewer, in his statement of facts, is very careful to make it appear that the trustee was entitled to the custody of the fund because of the fact that it was still in the hands of the sheriff."

But counsel says this proceeding is not brought under 67 (f) of the bankruptcy act and that as pointed out in In re Weitzel (supra) if other sections of the bankruptcy act void the transaction complained of here as an illegal preference he is entitled to recover. There can be no gainsaying this proposition, consequently we hasten to examine the other provisions relied on. We are referred to Sections 60 (b), 67 (c) reading as follows:

"If the bankrupt shall have procured or suffered a judgment to be entered against him, in favor of any person, or have made a transfer of any of his property, and if, at the time of the transfer, or of the entry of the judgment, or of the recording or registering of the transfer, if the law recording or registering thereof is required, and being within four months after the filing thereof and before the adjudication, the bankrupt be insolvent and the judgment or transfer then operate as a preference, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have reasonable cause to believe that the enforcement of such judgment or transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person. And for the purpose of such recovery, any court of bankruptcy, as hereinbefore defined, and any state court which

would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction." Sec. 60 (b) Bankruptcy Act, 1898.

"All conveyances, transfers, assignments, or encumbrances of his property, or any part thereof, made or given by a person adjudged a bankrupt under the provisions of this Act subsequent to the passage of this Act, and within four months prior to the filing of the petition, with the intent and purpose on his part to hinder, delay or defraud his creditors, or any of them, shall be null and void as against the creditors of such debtor, except as to purchases in good faith and for a present fair consideration; and all property of the debtor conveyed, transferred, assigned or encumbered as aforesaid, shall, if he be judged a bankrupt, and the same is not exempt from execution and liability for debts by the law of his domicile, be and remain a part of the assets and estate of the bankrupt, and shall pass to his said trustee, whose duty it shall be to recover and reclaim the same by legal proceedings or otherwise for the benefit of the creditors. And all conveyances, transfers, or encumbrances of his property made by any debtor at any time within four months prior to the filing of the petition against him, and while insolvent, which are held null and void against the creditors of such debtor by the laws of the state, territory or district in which such property is situate, shall be deemed null and void under this Act against the creditors of such debtor, if he be adjudged a bankrupt, and such property shall pass to the assignee and be by him reclaimed and recovered for the benefit of the creditors of the bankrupt. For the purpose of such recovery any court of bankruptcy, as hereinabove defined, and any state court which would have jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction." · Sec. 67 (e) Bankruptcy Act, 1898.

"The trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover the property so transferred, unless he ·was a bona fide holder for value prior to the date of adjudication. Such property may be recovered or its value collected from whomever may have received it, except a bona fide holder of value. For the purpose of such recovery any court of bankruptcy, as hereinabove defined, and any state court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction." Sec. 70 (e), Bankruptcy Act, 1898.

There is no question here of any conveyance by the debtor under Section 67 (e) and in order to recover under Section 60 (b) it must be alleged and proven that in suffering a judgment to be entered against him the creditor believed he had reasonable grounds to believe the debtor intended to give him a preference. In re Bailey, 16 Am. B. R. 293.

In the case at bar the debtor was out of the city and away from the jurisdiction of the court. In fact he was a fugitive from justice or at least it is so alleged in the petition for the attachment. It is not shown that plaintiff knew he was insolvent. The mere fact that the debtor was a fugitive creates no presumption of insolvency. A strong presumption of dishonesty may fairly be implied from the fact of flight but dishonesty and insolvency are very different things. "The wicked flee when no man pursueth." We are accustomed to speak of "ill gotten gains" and never of ill gotten losses. Money has ever been regarded as the consideration for dishonesty and corrupt practices. Witness Judas and the thirty pieces of silver in the garden of Gethsemene and Joseph's brethren and the twenty pieces of silver on the plains of Canaan as early and classic examples of contumacious perfidy resulting in a distinct improvement of the financial condition of the guilty parties whatever may be said of the moral or spiritual aspect of their conduct. "The wages of sin is death" but the same wage is paid to virtue and "the jingle of the guinea" has ever helped to "heal the hurt that honor feels".

The evidence does not establish that defendant knew or may reasonably be held to have known of the insolvency of its absconding debtor and the fact of his fleeing from justice known to and alleged by defendant creates no presumption which may form the basis of a reasonable conclusion that defendant must or ought to have known of such insolvency.

We have reached the conclusion announced with a full appreciation of the closeness of the ultimate question involved, and if we have erred we are consoled by the fact that we will soon be set right by a superior tribunal. In the meantime we are pleased to have reached a legal conclusion which seems to us of such manifest equity.

For the reasons assigned the judgment appealed from is reversed and it is now ordered that there be judgment in favor of defendant, Michel Brothers, dismissing plaintiff's suit at his cost.

Judgment reversed.

---

I respectfully dissent.

(Signed) W. A. BELL, Judge.