## CLEMENTS v. CONYERS.

Circuit Court of Appeals, Seventh Circuit.
April 17, 1929.

Rehearing Denied May 27, 1929.

No. 4092.

See, also, 31 F.(2d) 563.

Harold F. Lindley, of Danville, Ill., for appellant.

Wm. C. Welborn and Isidor Kahn, both of Evansville, Ind., for appellee.

Before ALSCHULER, PAGE, and ANDERSON, Circuit Judges.

PAGE, Circuit Judge. Appellant (called trustee), as trustee in bankruptcy, in the Eastern district of Illinois, for the Pike County Collieries Company (called bankrupt), filed his petition against appellee (called receiver) in the United States court for the Southern district of Indiana, asking that the receiver, who holds possession of the Indiana property of bankrupt under an order of an Indiana state court, be directed to surrender possession of the property to the trustee. That petition was denied.

Petition was filed in the circuit court of Gibson county, Indiana, by the Indiana Tie Company, against bankrupt, in November, 1925, and appellee was appointed receiver on the same day. That petition shows that bankrupt owed plaintiff $6,837.22, for material, for which a lien was claimed; that bankrupt was engaged in the business of mining coal, on a royalty basis, in Pike county, Indiana, on lands leased from the Williams Coal Company; that the only property owned by bankrupt was the equipment in Pike and Gibson counties, Indiana; that the Williams Coal Company had filed notice of a claim of lien for a large amount of unpaid royalty; that the value of its properties depended upon preserving the royalty contract; that bankrupt was incorporated in Illinois, where its officers resided; that a receiver should be appointed, with power to operate the properties and to keep the business as a going concern for all parties interested therein. Under the order of his appointment, the receiver took possession of the property and operated it for 2⅓ years before the petition in bankruptcy was filed.

Bankrupt, five days after the receiver was appointed, filed its general appearance in the Gibson circuit court, and on its request a co-receiver was then appointed, who continued to act for more than a year. Large sums of money were paid by the receiver for wages due at the time of his appointment. Many intervening petitions, claiming liens under the Indiana statute, have been filed and are now pending. A majority in number and amount of bankrupt's creditors have filed their claims, and have in various ways participated in the conduct of the business by the receiver. A greater part of the property now in the receiver's possession is receiver's property, and the estate has been improved under his management.

This petition was filed after a petition for the same purpose had been denied by the

Gibson circuit court. The trustee, admitting the facts, says: (a) That the jurisdiction of the bankruptcy court is exclusive; and (b) that no lien was obtained under or by the receivership proceeding.

In support of (a), reliance is placed on In re Watts & Sachs, 190 U. S. 1, 23 S. Ct. 718, 47 L. Ed. 933. The question there was whether two lawyers were guilty of contempt, because they had advised against the surrender to the bankruptcy court of property held by a receiver appointed by a state court within four months of the petition in bankruptcy. That was not, as is the case here, a hostile proceeding, commenced more than two years before bankruptcy, by a creditor for the benefit of all creditors, and wherein numerous other creditors had intervened more than four months before bankruptcy for the purpose of having liens established, but there the officer of the corporation, who had misappropriated its funds, had, within four months before bankruptcy, induced a creditor, to whom it had just paid a considerable sum of money, to commence a proceeding to wind up the affairs of the corporation. The only contention there was that the proceedings, commenced in the state court within four months of the filing of the petition in bankruptcy, being in the form of proceedings to wind up the affairs of an insolvent corporation, were terminated by the proceedings in bankruptcy. The Supreme Court said that, even if that contention was accepted, it did not necessarily involve the guilt of Watts & Sachs, which was the real question in the case.

Later, in Stellwagen v. Clum, 245 U. S. 605, 613, 38 S. Ct. 215, 217 (62 L. Ed. 507), the Supreme Court makes clear the extent to which it intended to go in the Watts Case: "True it is that general assignments for the benefit of creditors are acts of bankruptcy, * * * and since the amendment of 1903 (32 Stat. 797) a receivership of an insolvent debtor with a view to distribution of his property for the benefit of creditors will have the like effect. * * * In such cases the bankruptcy proceedings, taken within four months, displace those in the state court and terminate the jurisdiction of the latter" —citing Randolph v. Scruggs, 190 U. S. 533, 537, 23 S. Ct. 710, 47 L. Ed. 1165; In re Watts & Sachs, 190 U. S. 1, 31, 23 S. Ct. 718, 47 L. Ed. 933.

Our attention has not been called to any case, nor have we been able to find one, wherein it has been held that the jurisdiction of a state court, in a hostile creditor's proceeding, wherein the jurisdiction of the parties and the possession of the property has been obtained by a receiver more than four months prior to the institution of bankruptcy proceedings, is discontinued by bankruptcy proceedings, or that the bankruptcy court has any jurisdiction to take possession of the property from the state court or its receiver. On the contrary, it was held in Blair v. Brailey (5th C. C. A.) 221 F. 1, 3, relying upon Metcalf v. Barker, 187 U. S. 165, 23 S. Ct. 67, 47 L. Ed. 122, that, "where a valid judicial lien or levy has been secured or made four months or more prior to the bankruptcy, proceedings to enforce the same may be prosecuted to the end."

We find nothing in Miller v. Potts (C. C. A.) 26 F.(2d) 851, that affects the force of the Blair Case, as applied to the facts in the instant case. In the Blair Case, it was also said: "The Georgia court, by its appointment of the receivers and having them take possession of the property of the defendant in the suit, acquired the custody and control of that property for the purposes sought to be accomplished by the suit. Those proceedings effected a seizure of the property preliminary to making out of it the money required to satisfy the demands of the plaintiff and of other creditors who might intervene in the suit or prove their claims therein. What was done amounted to an equitable attachment of the property. From the date such seizure was effected the property was held under the process of the court, an end which the court's proceedings had in view being the application of the proceeds of the sale of that property to the satisfaction of the demands asserted by the bill or under it. There was a 'levy' within the meaning of that term as it is used in section 67f of the Bankruptcy Act [11 USCA § 107]. In re Tyler, 149 U. S. 164, 183, 13 S. Ct. 785, 37 L. Ed. 689." See, also, Neely v. McGehee (5th C. C. A.) 2 F.(2d) 853.

It was said upon oral argument, and not disputed, that some, at least, of the creditors upon whose petition the adjudication in bankruptcy was made, were among those who had filed their claims in the Gibson circuit court, and who constitute a large majority of the creditors of bankrupt. The fact that the receivership had long continued in the state court seems to have been because it was deemed for the best interest of creditors, and the record shows a successful operation of the property until the interference therewith by the trustee in bankruptcy. It does not appear that any creditor opposed the proceedings in the Gibson circuit court or sought in any way to hasten them.

74

We are of opinion that in no event would it be for the best interests of the creditors to take the property away from the administration of the Gibson circuit court of Indiana, and send it to the bankruptcy court in Illinois for administration.

The order of the District Court is affirmed.