## KAUFMAN v. EASTERN BAKING CO.
### No. 1789.

District Court, D. Massachusetts.
Dec. 28, 1943.

Louis Winer and Sidney J. Kagan, both of Boston, Mass., for plaintiff.

Milton C. Borenstein, of Chelsea, Mass., for defendant.

HEALEY, District Judge.

This is an action brought by a trustee in bankruptcy to recover from the defendant an alleged preference.

On May 19, 1941, an involuntary petition in bankruptcy was filed in this court against one Frank Sanford, hereinafter referred to as the bankrupt; and on May 26, 1941, he was adjudged a bankrupt. The plaintiff was appointed trustee.

On March 20, 1940, the bankrupt was indebted to the present defendant, the Eastern Baking Company, in the sum of $4,100 for money advanced to the bankrupt to perform a contract between the Eastern Baking Company and the bankrupt, whereby the bankrupt had agreed to manufacture certain machinery for the Eastern Baking Company. On that date, the Eastern Baking Company filed in the Superior Court of Massachusetts a Bill of Complaint (in equity) against the bankrupt, and others, seeking specific performance of the contract or refund and restitution of the $4,100 advanced, together with damages, and a temporary restraining order against the defendants restraining them from encumbering, interfering with, or disposing of the personal property, including machinery, equipment, tools, fixtures and stock in trade, belonging to the machine shop owned or operated by the bankrupt.

On March 20, 1940, an interlocutory decree was entered granting the temporary restraining order prayed for, until March 25, 1940. On March 25, 1940, the restraining order was continued. On March 27, 1940, by an interlocutory decree, the temporary restraining order was "continued in force pending the final determination of this suit vs defendant Frank Sanford."

On April 2, 1940, an interlocutory decree was entered continuing in force the restraining order "pending the final determination of this suit."

On July 8, 1940, interlocutory decrees were entered sustaining demurrers interposed to the Bill of Complaint by the bankrupt and others.

On July 18, 1940, the Eastern Baking Company filed a substitute Bill of Complaint, which was subsequently allowed as an amendment. Demurrers to the substitute Bill of Complaint were overruled. The substitute Bill of Complaint sought substantially the same relief, including a temporary restraining order. No temporary restraining order was granted on the substitute Bill of Complaint, at least until January 30, 1941. Nor was any other or further order or decree entered, granting or continuing any restraining order, permanent or temporary, until January 30, 1941. On that date, a consent interlocutory decree was entered, a part of which restrained one of the defendants (the bankrupt's wife) "until final determination of the present suit from transferring, conveying, pledging or otherwise disposing of the personal property, including machinery, equipment, tools, fixtures, and stock in trade belonging to the machine shop owned or operated by defendant Frank Sanford * * * except in the usual course of business." On March 14, 1941, an amendment to that interlocutory decree was entered in effect restraining the bankrupt and his wife "until final determination of the present suit from selling, transferring, conveying, pledging or otherwise disposing of the machinery" being made for the Eastern Baking Company.

On May 13, 1941, a final consent decree was entered adjudging that Frank Sanford was indebted to the Eastern Baking Company in the sum of $4,750; ordering the Special Master to sell to the Eastern Baking Company for $4,750, the machinery and property here involved, the sale of which

was restrained and enjoined by the temporary restraining orders and injunctions issued on the original Bill of Complaint; ordering the Special Master to give to the Eastern Baking Company a bill of sale to be executed by the bankrupt and his wife, of all their right, title and interest in and to the machinery and the property; ordering that from the sum of $4,750, the master make certain disbursements and pay the remaining sum ($3,842.80) to the Eastern Baking Company toward satisfaction of the indebtedness of $4,750. At some time subsequent to May 13, 1941, the sale was made and the proceeds paid as directed by the final decree.

On January 30, 1941, and at all times subsequent thereto, up to the date of the filing of the petition in bankruptcy, the bankrupt was insolvent within the meaning of Section 60, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. a, and the Eastern Baking Company had reasonable cause to believe that the bankrupt was insolvent during all of this period.

Alleging that the sale by the Special Master constituted a preference within the meaning of Section 60, sub. a [1] of the Bankruptcy Act, the trustee brings this action to avoid and recover such preference under Section 60, sub. b. [2]

The Eastern Baking Company, on the other hand, contends that the sale constituted the enforcement of an equitable lien which was created by the temporary restraining orders on the original Bill of Complaint, and which was continued in force by the preliminary injunctions issued on the original Bill of Complaint.

Under the provisions of Section 67, sub. a(1) of the Bankruptcy Act of 1938, 11 U.S.C.A. § 107, sub. a(1), "every lien against the property of a person obtained by attachment, judgment, levy, or other legal or equitable process or proceedings within four months before the filing of a petition in bankruptcy * * * by or against such person shall be deemed null and void (a) if at the time when such lien was obtained such person was insolvent or (b) if such lien was sought and permitted in fraud of the provisions of this Act: * * *." This language, of course, clearly implies that every lien so obtained more than four months before the filing of a petition in bankruptcy shall be valid as against the trustee in bankruptcy. See In re Kniffen's Estate, 231 Wis. 550, 286 N.W. 8. It is well settled that, in a creditor's suit such as the suit brought by the Eastern Baking Company against the bankrupt in the State court, a temporary

---

[1] Section 60, sub. a "A preference is a transfer, as defined in this Act, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition in bankruptcy, or of the original petition under chapter X, XI, XII, or XIII of this Act, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class. For the purposes of subdivisions a and b of this section, a transfer shall be deemed to have been made at the time when it became so far perfected that no bona-fide purchaser from the debtor and no creditor could thereafter have acquired any rights in the property so transferred superior to the rights of the transferee therein, and, if such transfer is not so perfected prior to the filing of the petition in bankruptcy or of the original petition under chapter X, XI, XII or XIII of this Act, it shall be deemed to have been made immediately before bankruptcy."

[2] "Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent. Where the preference is voidable, the trustee may recover the property or, if it has been converted, its value from any person who has received or converted such property, except a bona-fide purchaser from or lienor of the debtor's transferee for a present fair equivalent value: Provided, however, That where such purchaser or lienor has given less than such value, he shall nevertheless have a lien upon such property, but only to the extent of the consideration actually given by him. Where a preference by way of lien or security title is voidable, the court may on due notice order such lien or title to be preserved for the benefit of the estate, in which event such lien or title shall pass to the trustee. For the purpose of any recovery or avoidance under this section, where plenary proceedings are necessary, any State court which would have had jurisdiction if bankruptcy had not intervened and any court of bankruptcy shall have concurrent jurisdiction."

injunction restraining the disposition of property creates an equitable lien on the property. Metcalf v. Barker, 187 U.S. 165, 23 S.Ct. 67, 47 L.Ed. 122; Snyder v. Smith, 185 Mass. 58, 69 N.E. 1089; Gay v. Ray, 195 Mass. 8, 80 N.E. 693.

It was equally well settled that the Bankruptcy Act of 1898 at Section 67, sub. c[3], and Section 67, sub. f[4], recognized equitable liens created or obtained in equitable proceedings. Metcalf v. Barker, supra; Snyder v. Smith, supra.

The Chandler Act did not, in my opinion, alter this rule. Section 67, sub. a(1), specifically mentions liens obtained by "equitable process or proceedings."

Section 60, sub. a[5], does not render such a lien a preference even assuming that a bona fide purchaser from the bankrupt could have acquired superior rights in the property within four months of the filing of the petition in bankruptcy. See In re Miller, D.C., 40 F.Supp. 482. Section 67, sub. a(1), must be construed to exclude equitable liens obtained more than four months before bankruptcy, from the operation of Section 60, sub. a. It is significant that the words, "bona-fide purchaser from the debtor" are used in Section 60, sub. a, in defining a transfer, but are not used in Section 67, sub. a(1). Of course, since an equitable lien is good as against the trustee in bankruptcy, any sale made in enforcement of that lien cannot be construed to be a transfer constituting

---

[3] Act of 1898, Sec. 67, sub. c—"A lien created by or obtained in or pursuant to any suit or proceeding at law or in equity, including an attachment upon mesne process or a judgment by confession, which was begun against a person within four months before the filing of a petition in bankruptcy by or against such person shall be dissolved by the adjudication of such person to be a bankrupt if (1) it appears that said lien was obtained and permitted while the defendant was insolvent and that its existence and enforcement will work a preference, or (2) the party or parties to be benefited thereby had reasonable cause to believe the defendant was insolvent and in contemplation of bankruptcy, or (3) that such lien was sought and permitted in fraud of the provisions of this Act; or if the dissolution of such lien would militate against the best interests of the estate of such person the same shall not be dissolved, but the trustee of the estate of such person, for the benefit of the estate, shall be subrogated to the rights of the holder of such lien and empowered to perfect and enforce the same in his name as trustee with like force and effect as such holder might have done had not bankruptcy proceedings intervened."

[4] Act of 1898, Sec. 67, sub. f—"That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall, on due notice, order that the right under such levy, judgment, attachment, or other lien shall be preserved for the benefit of the estate; and thereupon the same may pass to and shall be preserved by the trustee for the benefit of the estate as aforesaid. And the court may order such conveyance as shall be necessary to carry the purposes of this section into effect: Provided, That nothing herein contained shall have the effect to destroy or impair the title obtained by such levy, judgment, attachment, or other lien, of a bona fide purchaser for value who shall have acquired the same without notice or reasonable cause for inquiry."

[5] "A preference is a transfer, as defined in this Act, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition in bankruptcy, or of the original petition under chapter X, XI, XII, or XIII of this Act, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class. For the purposes of subdivisions a and b of this section, a transfer shall be deemed to have been made at the time when it became so far perfected that no bona-fide purchaser from the debtor and no creditor could thereafter have acquired any rights in the property so transferred superior to the rights of the transferee therein, and, if such transfer is not so perfected prior to the filing of the petition in bankruptcy or of the original petition under chapter X, XI, XII or XIII of this Act, it shall be deemed to have been made immediately before bankruptcy."

a preference within the meaning of Section 60, subs. a, b. Nor could a decree made within four months of bankruptcy, ordering such a sale, be construed as a judgment within the meaning of Section 67, sub. a(1). See Metcalf v. Barker, 187 U.S. 165, 174, 23 S.Ct. 67, 47 L.Ed. 122.

■ It follows, therefore, that the interlocutory decrees of March 20, 1940, March 25, 1940, March 27, 1940, and April 2, 1940, created and continued in force equitable liens enforceable against the trustee in bankruptcy.

The next question is whether or not the interlocutory decrees of July 8, 1940, sustaining the demurrers terminated the equitable liens. If they did, then the plaintiff must prevail, because there was no further injunction or restraining order granted until January 30, 1941, which date was within four months of the filing of the petition in bankruptcy.

■ The decrees sustaining the demurrers were entitled interlocutory decrees. In fact, a decree sustaining a demurrer to a bill in equity, without more, under Massachusetts practice, must necessarily be an interlocutory, and not a final, decree. Parker v. Flagg, 127 Mass. 28, and cases there cited. In that case, the Supreme Judicial Court of Massachusetts said at page 30 of 127 Mass.: "By our practice, an order which merely sustains a demurrer to the bill, without more, is an interlocutory and not a final decree; for it does not put the case out of court, but leaves it still within the power of the court to allow amendments, either in form or in substance, at any time before the bill is ordered to be dismissed."

In Merchants' Bank of Newburyport v. Stevenson, 7 Allen, Mass., 489, at pages 490 and 491, the same court said: "We entertain no doubt of the power of this court to allow an amendment to a bill in equity, either in matter of form or substance, at any stage of the cause before the entry of a final decree. In this particular, we do not follow the rules of practice adopted in the English chancery courts. The authority to allow such amendments was expressly conferred on the court by Rev.Sts. c.

100, § 22, and a similar provision is reenacted in Gen.Sts. c. 129, § 41. It has already been decided that this statute is applicable to suits in equity as well as to actions at law. Crease v. Babcock, 10 Metc. 525, 529. Nor is it necessary, even where a demurrer is filed which goes to the equity of the whole bill, that the plaintiff should make a motion to amend in anticipation of an adverse decision. We do not in our practice, after a demurrer is sustained, regard the case as out of court so that it cannot be reinstated by amendment in matters of substance, because application therefor was not made before the decision on the demurrer was pronounced."

■ Thus, it is clear that the interlocutory decrees sustaining the demurrers did not constitute "the final determination of" the "suit." Therefore, since the temporary restraining order was "continued in force pending the final determination of" the "suit," there was imposed on the property at all times until the sale of the property to the Eastern Baking Company, an equitable lien valid as against the trustee in bankruptcy.

■ The plaintiff strongly urges that, if the injunction issued prior to the interlocutory decree sustaining the demurrer continued in force in spite of that interlocutory decree, the interlocutory decree of January 30, 1941, and the amendment thereto of March 14, 1941, were in substitution of any restraining orders previously issued. Even assuming that this is true, I am still of the opinion that the defendant · must prevail. It is clear from what I have said that there was a restraining order in force until at least the entry of the interlocutory decree of January 30, 1941. Now, even if the decree of January 30, 1941, terminated any prior restraining orders, it did not terminate them until the entry of that decree. Since that decree also contained an injunction, it would seem that the equitable lien would continue in force uninterrupted, since the order of January 30, 1941, restrained the sale of the same property restrained by the orders issued on the original Bill of Complaint.

Judgment shall, therefore, be entered for the defendant.