In re KAVANAUGH.

(District Court, D. Kentucky. March 5, 1900.)

1. BANKRUPTCY—DISSOLUTION OF LIENS—DECREE IN CREDITORS' SUIT.
    Bankr. Act 1898, § 67f, providing that all levies, "judgments," attachments, or other liens obtained through legal proceedings against an insolvent debtor, within four months before the filing of a petition in bankruptcy against him, shall be deemed null and void, in case he is adjudged a bankrupt, applies only to such judgments as per se create a lien, not to a decree of a state court of competent jurisdiction, rendered in a suit by a judgment creditor, setting aside a fraudulent conveyance by the debtor, and adjudging that a preferential mortgage made by him in contemplation of insolvency should operate as an assignment for the equal benefit of his creditors, in accordance with the state laws in that behalf, and appointing a receiver.

2. SAME—CONFLICT OF JURISDICTION—STATE COURT RECEIVER.
    Where a judgment creditor brought suit in a state court, before the passage of the bankruptcy act, to set aside a fraudulent conveyance by his debtor, and to have a mortgage given by the latter declared to operate as a general assignment for creditors, and obtained a decree to that effect, and the state court appointed a receiver, who took possession of the property of the debtor, and thereafter the debtor was adjudged bankrupt on his voluntary petition, the adjudication not being based upon the transfers impeached in the creditors' suit, held that, as to all property covered by the decree, the court of bankruptcy would not require its surrender by the receiver, nor otherwise interfere with its administration by the state court.

3. SAME—PROPERTY AFFECTED—INTERVENTION BY TRUSTEE.
    The decree of the state court, relating back to the date of the preferential mortgage, would bind all property owned by the bankrupt at that time; but property not passing by the assignment, or which was acquired by the bankrupt thereafter, or remaining after the satisfaction of all debts existing at that date, should be delivered to the trustee in bankruptcy, to be administered for the benefit of subsequent creditors; and for the assertion of his rights in that behalf, and the ascertainment of his interest, if any, the trustee should be authorized to intervene in the proceedings in the state court.

In Bankruptcy. On review of decision of referee in bankruptcy.

Maurice Galvin, for trustee in bankruptcy.

William McD. Shaw, for receiver.

EVANS, District Judge. On July 15, 1898, Robert Howe, a judgment creditor of the bankrupt, instituted an action in equity in the Kenton circuit court, wherein he sought to have a bill of sale from the bankrupt to his wife, dated August 25, 1897, set aside as fraudulent and void; and, second, to have the mortgage from the bankrupt to Kloak Bros., dated May 31, 1898, adjudged to come within the provisions of what was formerly well known in Kentucky as the "Act of 1856," and now embraced in sections 1910 to 1917, inclusive, of the Kentucky Statutes, so that it would operate as a general assignment of all the debtor's property for the equal benefit of all his then existing creditors, upon the ground that the mortgage was made in contemplation of insolvency, and with the design to prefer Kloak Bros., to the exclusion, in whole or in part, of his other creditors. This litigation progressed until, on the 10th and 13th days of January and the 2d day of February, 1900, such judgments and amended judgments were rendered by the Kenton circuit court as completely

gave the relief prayed for in the suit as to both the bill of sale and the mortgage. In order to carry this judgment into effect, George M. Kiefer was appointed the court's receiver to take possession of the property involved in the litigation, with a view to its distribution, and he did so. On the 16th day of January, 1900, Kavanaugh, on his own voluntary petition, was adjudged a bankrupt by this court, and on February 7, 1900, W. H. Miller was elected his trustee, and qualified as such. Claiming that the action of the Kenton circuit court was void upon the one hand, or had been superseded by the proceedings in bankruptcy upon the other, the trustee filed a petition asking this court to direct the receiver (Kiefer) to deliver to him, as trustee herein, all the property now in the receiver's possession belonging to, or which had belonged to, the bankrupt, including all money and book accounts made and created while the receiver was conducting the business described in the petition. The referee entered orders accordingly, and the court is asked to review his action.

We can perceive no ground for supposing that the judgment of the state court was void other than as it might be affected by section 67 of the bankrupt act of July 1, 1898. The bill of sale and the mortgage attacked in the suit of Howe were both executed before the bankrupt law went into operation, and the adjudication in this case was in no wise based upon either of these writings. Had such been the case, different considerations would then apply; for there is a very plain and manifest distinction between the case before us and one where the transfers were themselves the basis of the adjudication in bankruptcy. In that event, if this court, when those transfers were held to be void under the law, did not secure possession of the assets involved, the whole bankruptcy proceeding would be futile, and instead of the bankruptcy act being the supreme law of the land, as the constitution provides, and by which all courts, both state and federal, are equally bound, it would be a farce. Here, however, different principles apply. Long before the adjudication the state court had been appealed to for certain relief, which it was entirely competent to give, and, after protracted or long-delayed litigation, that court granted that relief, and based it upon acts done by the bankrupt before the bankrupt law was passed, and long before its benefits were availed of by the debtor.

Section 67f of the bankrupt act contains the following provision:

"That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall, on due notice, order that the right under such levy, judgment, attachment, or other lien shall be preserved for the benefit of the estate; and thereupon the same may pass to and shall be preserved by the trustee for the benefit of the estate as aforesaid."

This does, indeed, make certain liens and judgments void if obtained within four months of the adjudication; but it appears to us to be evident that the language, properly construed, was intended

only to apply to such judgments as of themselves created liens. Liens thus created were intended to be overthrown and made ineffectual by the adjudication in bankruptcy, unless preserved for the benefit of the estate.

Probably in most of the states of the Union—certainly in many of them—a judgment for debt, particularly if docketed and indexed, creates a lien upon the debtor's property; and we apprehend, from the connection in which the word "judgment" is used in the paragraph quoted, that it was meant to confine its meaning to that class of judgments. The section in the main relates to liens, although subsection "e" provides that certain mortgages or transfers made after the passage of the bankrupt act shall also be void upon certain conditions therein provided.

It seems to us that a clear distinction should be drawn between a judgment, in this sense, upon a debt,—a mere personal liability,— and a decree of the chancellor declaring the property rights of parties in a case like the one before us, but which in no way created a lien. Particularly is this true, as the action in the state court was brought upon a judgment in personam obtained long before, and upon which there had first been an execution and return of nulla bona. This was therefore an ancillary proceeding in equity for the enforcement of a judgment at law. In Kentucky there is no statute which creates a lien by mere virtue of the judgment at law. In this state liens are secured by means of the levy of the fi. fa. issued upon the judgment. So that we think that section 67f does not apply to the sort of judgment rendered by the state court in the Howe suit.

The state court having acquired jurisdiction of the subject-matter of the Howe suit long before the adjudication, and before the bankrupt act was passed, and the adjudication in this case not being in any wise based upon the transfers assailed in the state court proceeding, it seems to us that this court should by no means interfere, unless to the extent presently to be indicated. The subject-matter of the litigation in the state court was entirely within its jurisdiction, the transfers there assailed were not made subsequent to the passage of the bankrupt act, as contemplated by section 67e, and those transfers were in no sense the basis of the adjudication in bankruptcy in these proceedings. These considerations, combined, make it peculiarly improper to interrupt the progress of the case in the state court.

It seems to us, also, that the judgment of the state court related back at least to May 31, 1898, when the preferential mortgage was made, and the result of that is that the property which the bankrupt owned at that time should be administered through the proceedings in the state court. But if the bankrupt acquired any of the property after that date, or if, upon any just principle, any part of the property which came to the hands of the receiver belonged, not to him, but to the bankrupt, because it did not pass by the previous assignment, even if it had been indirectly acquired by means of the mortgaged property and its avails, that property belongs to the bankrupt, and should probably go to those creditors whose debts were created subsequent to May 31, 1898, at least until they are made equal

with the others, and should, when obtained, be distributed in these proceedings. Particularly will this be so if the property on hand at that date, or its avails, is more than sufficient to pay the bankrupt's then existing liabilities in full. In that event, the surplus would be available for the trustee in these proceedings.

If sufficient assets have come to his hands, or if creditors will guaranty the expenses and costs of the trustee in the effort, he should be authorized, if so advised by counsel, to intervene in the state court proceedings for the purposes indicated, and in order to have the amount he is entitled to, if any, ascertained. It follows from what has been said that the ruling of the referee upon the petition of the trustee is disapproved and reversed.