## Wilson, Sheriff, et al. v. Cooper, et al.,

(Decided May 18, 1926.)

### Appeal from Christian Circuit Court.

1. Judgment.—A judgment on a note on which no execution issues does not create a lien.

2. Bankruptcy—Judgment on Note on which No Execution Issued Held Not Invalidated, Notwithstanding Debtor was Adjudicated a Bankrupt Within 4 Months (Bankr. Act, section 67f, U. S. Comp. St., section 9651).—A judgment against maker of note on which no execution was issued was not affected, under Bankr. Act, section 67f (U. S. Comp. St., section 9651), by adjudication within 4 months that maker was bankrupt, since judgment did not create a lien, and that section refers only to judgments creating liens.

3. Subrogation—Surety on Bankrupt's Replevin Bond, Based on Valid Judgment, is Subrogated to Rights of Creditor on Payment. —Where surety on bankrupt's replevin bond, given for amount of valid judgment, pays debt, he is subrogated to right of creditor and is entitled to file his claim for the same amount against the bankrupt estate.

4. Replevin—Liability of Surety on Judgment Debtor's Replevin Bond, Given for Amount of Valid Judgment, though Rendered Within 4 Months of Adjudication that Debtor was Bankrupt, Remains Unaffected by Bankruptcy Proceedings (Bankr. Act, section 16, U. S. Comp. St., section 9600).—Liability of surety on bankrupt's replevin bond, given for amount of valid judgment rendered within 4 months prior to bankruptcy adjudication, was not affected, in view of Bankr. Act, section 16 (U. S. Comp. St., section 9600), by instituton of bankruptcy proceedings.

5. Bankruptcy—Lien of Mortgage Executed by Bankrupt to Indemnify His Surety on Replevin Bond, Based on Valid Judgment Against Him, is Enforceable Against Proceeds of Mortgaged Property in Trustee's Hands.—Where on judgment, rendered within 4 months of judgment debtor's adjudication as bankrupt, but valid because creating no lien, debtor and another, as surety, executed replevin bond, and debtor executed mortgage to indemnify surety,

the mortgage is valid and enforceable against proceeds of mortgaged property in hands of trustee in bankruptcy.

DOUGLAS BELL for appellant.

BREATHITT & BREATHITT and WHITE & CLARK for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

On April 12, 1921, R. E. Gilliam, a prosperous farmer and merchant of Christian county, Kentucky, executed a promissory note for $2,000.00, due eighteen months after date. In due course this note was negotiated and assigned to the Bank of Louden, a Tennessee corporation. Not being paid at maturity it was sent to an attorney in Hopkinsville for collection. Gilliam repeatedly promised to pay and suit was not filed until ten days before the June, 1923, term of the Christian circuit court, when he avoided service of process by leaving the county. The case was continued with an *alias* summons for Gilliam, which was later executed. Gilliam continued to seek indulgence, though offering no defense. Finally on October 10, 1924, default judgment was rendered against him for the amount of the note and interest. No execution was issued on the judgment, but on October 23 Gilliam, together with R. R. Cooper, as surety, executed a replevin bond in favor of the bank for the amount of the judgment. Gilliam also executed a mortgage in favor of Cooper on certain tobacco to indemnify him against loss by reason of the suretyship.

On the 26th of January, 1924, an involuntary petition in bankruptcy was filed against Gilliam and on the 10th of February following he was adjudged a bankrupt. The tobacco mentioned in the mortgage was delivered to the trustee in bankruptcy and sold by him for the sum of $964.83. Later, and about nine months after the execution of the replevin bond, the bank caused an execution to issue thereon, whereupon Cooper filed this action, seeking to enjoin its collection on the ground that the judgment and replevin bond based thereon were invalidated by the bankruptcy proceedings. The trustee in bankruptcy intervened, alleging that the replevin bond and bond of indemnity were executed simultaneously and that if the former is upheld that Cooper has a valid lien on the tobacco mentioned in the mortgage, the proceeds of which

are in his hands; but asserting Gilliam was insolvent on October 10, 1924; that he suffered the judgment to be entered against him, and executed the replevin bond and mortgage with the view of preferring the bank to his other creditors, all within four months prior to the filing of the involuntary petition in bankruptcy, and that thereby the judgment, replevin bond and mortgage were void and of no effect. The facts above set out are embodied in an agreed stipulation, in which it further appears that the bank was located two hundred miles from Christian county and that Gilliam was not acquainted with any of its officers; that Gilliam was in fact insolvent on both the 10th and 23rd days of October, 1923, but that the bank's attorney considered him solvent, and there is no intimation that Cooper or anyone else thought otherwise, it being admitted that he had no interest at all in the litigation, and that he executed the replevin bond as surety solely for accommodation. The circuit court sustained the contentions of Cooper and of the trustee, and the bank has appealed.

It thus appears that Gilliam was insolvent at the time of the rendition of the judgment, but it does not appear that this fact was known to any other parties. It is not shown that he acted fraudulently or sought to prefer the bank to his other creditors. Indeed he hindered rather than aided the rendition of the judgment, and as both insolvency and a design to prefer must exist to constitute a preference under the act of 1856, it is evident that such statute does not apply to the entry of the judgment. See Grimes v. Grimes, 86 Ky. 511; Heidrich & Co. v. Silva, 89 Ky. 422; Levis v. Zinn, 93 Ky. 628; Fairbanks, Morse Co. v. Madisonville Savings Bank, 141 Ky. 374. Nor is there any intimation that the bank was privy to or had any information concerning the execution of the mortgage, which seems to have been executed simultaneously with the execution of the bond and, for which it afforded only partial indemnity. Under such circumstances if the judgment was valid the execution of the replevin bond did not constitute a preference, but was analogous to the execution of a new note for the debt with Cooper as surety.

Appellees admit that if the judgment and replevin bond are valid Cooper is bound on the bond, notwithstanding Gilliam has been adjudged a bankrupt, and the

trustee also admits that if those instruments are valid the mortgage is valid and enforceable against the bankrupt's estate. But both appellees insist that the judgment is nullified by the provisions of 67f of the bankruptcy act, and that the bond and mortgage being based thereon are also void. On the other hand appellant contends that the judgment created no lien and is not embraced in the provisions of that statute, which reads:

> "That all levies, judgments or other liens obtained through legal proceedings against a person who is insolvent at any time within four months prior to the filing of the petition in bankruptcy against him shall be null and void in case he is adjudged a bankrupt, and the property affected by the lien, judgment, attachment or other lien shall be deemed wholly discharged and released from same. . . . "

It will be noted that under the law in this state the entry of a judgment does not create a lien on the property of the judgment debtor, and as no execution issued against Gilliam his property was not affected by the entry of the judgment or the execution of the replevin bond, hence the entire case turns upon the construction of the statute.

Taken literally, the statute may be construed as nullifying all judgments entered against an insolvent person within four months prior to the filing of the petition in bankruptcy against him, but evidently such is not its purpose. As pointed out in Metcalf v. Barker, *infra*, such a construction conflicts with sections 17 and 63a of the act. Also in that case it is distinctly held that the statute does not embrace judgments based on pre-existing liens, and to the same effect is Globe Bank v. Martin, 236 U. S. 288. It must, therefore, be admitted that the word "judgment" is used in the statute in a restrictive sense and must refer to a particular class of judgments. In some states the entry of a judgment creates a lien on the property of the judgment debtor, in other states a lien is not thereby created. The title of this section is "Liens." The language of the act is "All levies, judgments *or other liens* obtained through legal process. . . . " When this language is considered in connection with the well understood classification of judgments mentioned above,

and the other matters suggested, it is evident that only judgments creating a lien were meant, and such is the view of Mr. Remington, who says:

"The judgment referred to in section 67f, where the statute includes all judgments and other liens, does not refer to judgments where no lien is obtained. It means judgment liens." Remington on Bankruptcy, section 1878. Among the cases cited in support of the text are: Metcalf v. Barker, 187 U. S. 165; Kinmouth v. Braeutigam, 63 N. J. Eq. 103; In Re Bailey, 144 Fed. 214; In Re Pease, 121 Pac. 629; Owens v. Brown, 120 Fed. 812; In Re Beaver Coal Co., 113 Fed. 889, and many others.

The learned annotater of the U. S. Compiled Statutes, 1916, vol. 9, page 11658, upon the same authority reaches the same conclusion thus:

"It is not the judgment which the bankruptcy law annuls or avoids, but the lien or preference springing from it, and hence it applies only to judgments of which a lien on property is a necessary result or concomitant."

Typical quotations from the opinions cited are: Metcalf v. Barker, 187 U. S. 174:

"In our opinion the conclusion to be drawn from this language (the statute) is that it is the lien created by a levy or judgment or an attachment or otherwise that is invalidated. . . . A judgment or decree in enforcement of an otherwise valid pre-existing lien is not the judgment denounced by the statute, *which is plainly confined to judgments creating liens. Moreover other provisions of the act render it unreasonable to impute the intention to annul all judgments recovered within four months.* By section 63a, fixed liabilities evidenced by judgments absolutely owing at the time of the filing of the petition and before the consideration of application for discharge may be proved and allowed, while under section 17 judgments in actions of fraud are not released by a discharge, and other parts of the act would be wholly unnecessary, if section 67f must be taken literally." (Our italics).

In Re Beaver Coal Co., 113 Fed. 889:

"Construing the language above quoted from section 67f we think it refers solely to liens, and that it does not mean that all judgments rendered within four months prior to the bankruptcy shall be null and void. The use of the words 'judgments' and 'or other liens' indicates that it was the purpose of the act to avoid liens only which were obtained by judicial proceedings within the prescribed time, and not to declare void judgments as such. This view is in harmony with the other provisions of the bankruptcy law."

In Re Blair, 108 Fed. 529:

"Sec. 67f avoids certain liens, if created within four months. This is its object. It does not avoid judgments or levies, except so far as they create a lien."

In Re Kavanaugh, 99 Fed. 928:

"This does indeed make certain liens and judgments void if obtained within four months of the adjudication; but it appears to us to be evident that the language, properly construed, was intended only to apply to such judgments as of themselves created liens. Liens thus created were intended to be overthrown and made ineffectual by the adjudication in bankruptcy, unless preserved for the benefit of the estate.

"Probably in most of the states of the Union— certainly in many of them—a judgment for debt, particularly if docketed and indexed, creates a lien upon the debtor's property; and we apprehend from the connection in which the word 'judgment' is used in the paragraph quoted, that it was meant to confine its meaning to that class of judgments. The section in the main relates to liens, although subsection 'e' provides that certain mortgages or transfers made after the passage of the bankruptcy act shall also be void upon certain conditions therein provided.

"It seems to us that a clear distinction should be drawn between a judgment in this sense, upon a debt—a mere personal liability—and a decree of the

chancellor declaring the property rights of the parties in a case like the one before us, but which in no way created a lien."

Doyle v. Heath, 4 A. B. R. 705:

"Literally construed, again section 67f avoids all judgments against a bankrupt rendered within four months of the filing of the petition, irrespective of the time of the institution of the suit in which the judgment was ordered, and all such judgments are avoided, although no lien or preference was created thereby, for the language is without limitation or exception. But the difficulty and unreasonableness of adopting a literal construction of the words 'all judgments' appear upon considering the effect produced upon other sections of the act, and upon other provisions of the United States Statutes concerning judgments. In the first place the words are found in the act under the subtitle 'liens' and they are conjoined with 'levies, attachments or other liens. . . .' And if the words 'all judgments' are to be literally construed, they must include judgments rendered in the courts of foreign countries, irrespective of treaty stipulations, and even the judgments of the very court in which the estate of the bankrupt is being administered. We decline to adopt such a construction of the language of the act, and we construe the words 'all judgments' to be qualified and defined by their context, and to be limited to the lien or preference created by such a judgment."

Dryer v. Kicklighter, 228 Fed. 744; In Re Kenney, 105 Fed. 898, and Clarke v. Laremore, 188 U. S. 487, are relied upon as laying down a contrary rule. Those cases arose in the states of Georgia and New York, in which the entry of a judgment does not create a lien, but in each case an execution had been issued and levied and the debtor's property sold, and within four months after the entry of the judgment an involuntary petition in bankruptcy had been filed against the debtor. The contests were between the trustee in bankruptcy and the officer levying the execution, involving *liens obtained by judicial proceedings;* and in each case the court necessarily held in favor of the trustee.

In the Dryer case it is said:

"The judgments under which the skidder involved in this case was sold were obtained within four months prior to the filing of the petition in bankruptcy against the Perkins Lumber Company and were therefore in accordance with the provisions of the bankruptcy law null and void. This provision (67f) of the bankruptcy law not only strikes down the judgment under which the property was sold because rendered within the inhibited period but also the levies made by the constable of the execution issued on this judgment and the sale itself made by virtue thereof to the defendant."

In the Kenney case it is said:

"There can be no doubt that it was the intention of Congress by this section to prohibit creditors of a bankrupt from obtaining preferences over other creditors, as the result of any legal proceedings against him, during the period of four months prior to the filing of the petition; and apt words are used to express that intention. The property of the bankrupt is safeguarded against all such proceedings by the provision *that such of them as would ordinarily be liens against such bankrupt shall be deemed null and void and the property wholly discharged and released from the same.* A broad and liberal construction of the section should be adopted if necessary to effect this intent, but no strained construction is necessary in the face of language so comprehensive. . . . But under the provisions of the bankrupt act, the judgment and the levy are to be held null and void." (Our italics.)

It will be observed that the same result would have been reached, that is, a judgment in favor of the trustee, by merely holding that the execution creating the liens and the sales based thereon were invalid, and such is the basis of the Kenney opinion, and the effect of Clarke v. Laremore reviewing In Re Kenney, though appellees also rely on its authority.

In that opinion it is said:

"The judgment in favor of petitioner against Kenney was not like that in Metcalf v. Barker, 187 U. S. 165, one giving effect to a lien theretofore exist-

ing, but one *which with the execution issued thereon created the lien;* and as judgment, execution and levy were all within four months prior to the filing of the petition in bankruptcy, the *lien* created thereby became null and void on the adjudication of bankruptcy. This nullity and invalidity relate back to the time of the entry of the judgment and affect that and all subsequent proceedings. The language of the statute is not 'when' but 'in case he is adjudged a bankrupt,' and *the lien* obtained through these legal proceedings was by the adjudication rendered null and void from its inception. . . . It is said that money was not the property of the bankrupt but of the creditor in the execution. Doubtless as between the judgment creditor and debtor, and while the execution remained in force, the money could not be considered the property of the debtor, and could not be appropriated to the payment of his debts as against the rights of the judgment creditor, but it had not become the property absolutely of the creditor. The writ of execution had not been fully executed. Its command to the sheriff was to seize the property of the judgment debtor, sell it and pay the proceeds over to the creditor. The time within which that was to be done had not elapsed, and the execution was still in his hands not fully executed. The rights of the creditor were still subject to interception. Suppose, for instance, there being no bankruptcy proceedings the judgment had been reversed by the appellate court and the mandate of reversal filed in the trial court, could it for a moment be claimed that notwithstanding the reversal of the judgment, the money in the hands of the sheriff belonged to the judgment creditor, and could be recovered by him, or that it was the duty of the sheriff to pay it to him? The purchaser at the sheriff's sale might keep possession of the property which he had purchased, but the money received as the proceeds of such sale would undoubtedly belong and be paid over to the judgment debtor. The bankruptcy proceedings operated in the same way. They took away the foundation upon which the rights of the creditor obtained by judgment, execution, levy and sale rested. The duty of the sheriff to pay the money over to the judgment creditor was gone and that

money became the property of the bankrupt, and was subject to the control of his representative in bankruptcy." (Our italics).

It will be noted that the opinion refers with approval to Metcalf v. Barker, which holds that the statute "is *plainly confined to judgments creating liens*" and distinguishes the Clark judgment as "one which with the *levy of the execution created a lien.*" It does not say that the judgment of the state court was void as is indicated in In Re Kenney, but on the contrary holds that "as judgment, execution and levy were all within the time limit fixed by the statute, *the liens* thereby created became null and void upon the adjudication in bankruptcy," and no doubt that is what is meant by the subsequent expression, "They (the bankruptcy proceedings) take away the foundation upon which the rights of the creditor obtained by judgment, execution and levy rested," as well as by the illustration given of an appeal and reversal of the judgment in the state court. The sheriff held the proceeds of sale by virtue of the lien he had asserted upon the property. The lien being held invalid, the invalidity related back to its inception. The execution which created it was nullified and necessarily the judgment was affected as it was left unenforceable save as a proven claim against the bankrupt estate. Thus construed the opinion harmonizes with Metcalf v. Barker, *supra*.

It may further be said that while a valid lien cannot be based on an invalid judgment it does not follow that a judgment is void because a valid execution cannot issue thereon. In this respect the judgment in this case is not different from a judgment entered more than four months before the filing of the bankruptcy proceedings. Admittedly such judgment is valid and could be replevied, though an execution issued thereon is condemned by the express terms of the statute.

We therefore conclude that the judgment was not affected by the subsequent bankruptcy proceedings, and being valid there was no reason why Cooper could not voluntarily pay or replevy it. In so doing he was not decreasing the bankrupt's estate nor increasing the claims against it. The primary purpose of the bankruptcy act is to secure equality among creditors and to prevent any preference between them; but this rule was

not violated by the execution of the bond, for upon its payment Cooper would be subrogated to the rights of the bank and be entitled to file his claim for the same amount against the estate; as corollary thereto his liability as surety on the bond was not affected by the bankruptcy proceedings. National Bankruptcy Act, section 16; Loveland on Bankruptcy, 3rd ed., section 296; also page 854; Dersch v. Walker, 121 Ky. 374; Slusher v. Hopkins, 124 Ky. 44; Andrews v. Jones, 36 A. L. R. 447, and annotations of this case, page 451. But it is urged that by the potential threat of the issual of an execution the judgment was held *"in terrorem"* over Gilliam and caused him to create a lien on his property to Cooper as an inducement for Cooper to sign the replevin bond, and thus indirectly to give the bank a preference, in violation of the spirit of the act. Concededly the act should be liberally construed; but in the absence of any actual or implied threat, or any act impugning the good faith of the parties, this argument is fanciful rather than real. If available it would apply with equal force to admittedly valid judgments obtained more than four months before the institution of the bankruptcy proceedings, a clear fallacy.

It follows that the judgment and replevin bond were valid and that the court erred in cancelling same. As the trustee in bankruptcy in his pleadings concedes that the mortgage of indemnity is valid in the event the judgment and replevin bond are valid, this instrument should also be upheld.

Wherefore, the judgment is reversed and cause remanded for proceedings consistent with this opinion.